## In re Anonymous No. 8 D.B. 77

Disciplinary Board Docket no. 8 D.B. 77.

HARRINGTON, *Board Member,* April 15, 1980—Pursuant to Pa.R.D.E. 218(c)(5), the Disciplinary Board of the Supreme Court of Pennsylvania (board), herewith submits its findings and recommendations to your honorable court with respect to the above petition for reinstatement.

# I. HISTORY OF PROCEEDINGS

This matter comes before your honorable court on the petition of [Respondent] for reinstatement following his suspension from the practice of law.

Acting on the recommendation of the board, your honorable court, by order dated August 31, 1976, suspended [Respondent] from the practice of law for a period ". . . of three (3) months and until further Order of Court." Supreme Court Docket No. 128, Disciplinary Docket No. 1. That suspension resulted from proceedings on a petition for discipline, docketed at the Disciplinary Board No. 20 D.B. 75, involving complaints by four separate clients that [Respondent]* had violated Disciplinary Rules:

6-101(A)(3)—Neglect of a legal matter entrusted to him.

1-102(A)(4)—Conduct involving dishonesty, fraud, deceit or misrepresentation.

9-102(B)(4)—Failing to deliver promptly upon request properties of the client in possession of the lawyer. The charges involved a time period generally between 1971 and 1975.

The charges were thoroughly aired at a hearing before hearing committee [   ], at which [Respondent] acknowledged the deficiencies in his practice and promised to take steps to correct the conditions that had caused problems for some of his clients. The hearing committee recommended that the

---

*In order to avoid confusion between the terms respondent and petitioner as the same may have been used in the original petition for discipline and as the terms may be used in the petition for reinstatement, reference will hereinafter be made simply to [Respondent].

150

matter be concluded by public censure of [Respondent] by the Supreme Court of Pennsylvania.

Upon review, the board had before it and took into consideration all of the testimony taken before the hearing committee, the stipulations and exhibits introduced into evidence at the time and in addition, the board had access to the records of several informal admonitions administered to [Respondent] by Chief Disciplinary Counsel on April 21, 1975 and October 27, 1975. The board then changed the recommendation of the hearing committee from public censure to three months' suspension: Pa.R.D.E. 208(d)(2)(iii).

After the period of suspension imposed by your honorable court had ended, [Respondent] then on February 11, 1977, filed a petition for reinstatement, docketed at Supreme Court Docket no. 128, Disciplinary Docket no. 1. Seventeen days later, disciplinary counsel filed a petition for discipline at no. 8 of 1977. Both matters were assigned to a different committee, Hearing Committee [ ], and testimony concerning both matters was taken on April 13, 1977.

In a report filed August 30, 1977, hearing committee [ ] made findings of fact and arrived at conclusions of law leading to a recommendation that [Respondent] be reinstated to the practice of law. In the same report, the hearing committee also made a finding at 8 D.B. 77 that [Respondent] was in violation of D.R. 6-101(A)(3)—neglect of legal matters, and D.R. 1-102(A)(4)—conduct involving dishonesty, fraud, deceit or misrepresentation and recommended that [Respondent] be disciplined by being publicly censured by the Supreme Court of Pennsylvania. Disciplinary Counsel filed a brief on exceptions to the report of hearing committee [ ]

and argued forcibly that [Respondent] did not produce "clear and convincing evidence" sufficient to prove his current fitness to practice law and to warrant reinstatement. [Respondent] filed no brief opposing exceptions.

On October 6, 1977, disciplinary counsel filed a petition to reopen the record. The petition was granted on November 18, 1977, by order of the chairman of the Disciplinary Board. The record was reopened and the case remanded to hearing committee [ ] to receive new evidence of another alleged violation of Disciplinary Rules relating to neglect. Specifically, [Respondent] was complained against by Attorney [A], of [ ], Pa. The complaint was that [Respondent] had failed to discharge a lien on real estate even though [Respondent] had been entrusted with the funds for that purpose. At that time, [Respondent] requested that no hearing be scheduled until Attorney [A]'s complaint could be satisfied. [Respondent] paid the judgment on April 21, 1978, and shortly thereafter was presented with a stipulation of facts for his signature. The stipulation for some reason not completely clear in the record was not signed until March 1, 1979. Hearing committee [ ] then scheduled a hearing for June 21, 1979, at which time the committee took testimony relative to matters raised in Disciplinary Counsel's petition to reopen.

Thereafter, on September 19, 1979, the hearing committee filed a supplemental report in which it was recommended that [Respondent] not be reinstated to practice law, and, in the event that this recommendation was ultimately adopted by the Supreme Court, that at 8 D.B. 77 [Respondent] be given a private reprimand for violation of the Disciplinary Rules charged therein.

In the matter of the Reinstatement at 20 D.B. 75, the board adopts the recommendation of the hearing committee contained in its supplemental report filed September 19, 1979, and respectfully recommends to this honorable court that the petition of [Respondent] for reinstatement be denied.

At 8 D.B. 77, the board adopted the recommendation of hearing committee [  ] and will act in accordance with the applicable rules.

## II. DISCUSSION

The committee and Disciplinary Board proceedings on petition for reinstatement are not for the purpose of arriving at new judgments on old Disciplinary Rule violations. Rather, such proceedings are to provide the petitioner an opportunity to meet the burden of ". . . demonstrating by clear and convincing evidence that such person has the moral qualifications, competency and learning in law required for admission to practice law in this Commonwealth and that the resumption of the practice of law within the Commonwealth by such person will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive of the public interest." Pa.R.D.E. 218(c)(3)(i).

In order to better explain the board's recommendations, it is necessary to review briefly the history of the charges against petitioner, [Respondent]. When respondent was suspended from practice on August 31, 1976, he had been found to be in violation of various disciplinary rules principally relating to neglect of matters entrusted to him by four clients. In the report and recommendation of the Disciplinary Board to the Supreme Court filed August 3, 1976, the clients were identified and their

complaints discussed. The board found the violations of the various rules and recommended discipline therefor. Those matters were, very briefly, as follows:

[B].

[Respondent] was retained by [B] on August 18, 1972, to obtain a divorce or annulment. After unreasonable delay a hearing was set for March 27, 1975. One of the reasons for the delay offered by [Respondent] was that he had had difficulty in locating certain necessary parties or witnesses. Before the hearing committee, he made the representation, or at least it was implicit in his testimony, that reasonable efforts had been made to locate the necessary persons. In fact, no such efforts had been made and it wasn't until March, 1976 that the decree was finally signed. In the meantime, [Respondent] had done nothing to inquire as to the status of his client's matter or to determine the cause for the apparent delay in finalizing of the annulment decree.

[C].

[Respondent] was retained by [C] in September or October of 1972, to obtain a lien against real property owned by one [ ]. Suit was filed by [Respondent] in December, 1972 and as of June, 1975, the matter was still pending. The clients complained to [Respondent] and when he failed to provide any satisfactory explanation for the delay, they demanded that he withdraw from the matter and promptly return papers entrusted to him. He refused to do so.

[D].

[Respondent] was retained on October 20, 1970, to handle matters relating to the estate of [D], deceased. He paid the inheritance tax in October, 1971 and prepared other forms relating to the ad-

ministration of the estate but the forms were never filed. The estate was never closed. Certain papers relating to the estate were returned to the client on June 16, 1975, some four years, six months following the date of employment in the matter.

[E].

[E] retained [Respondent] in February, 1972, to represent her in the purchase of real estate located in [ ], Pennsylvania. More than three years after he had been retained, [Respondent] completed the transaction. [Respondent] failed to give any reasonable explanation for the delay.

In addition to the incidents referred to above at 20 D.B. 75, the second hearing committee [ ] taking testimony and conducting the proceedings at 8 D.B. 77 found additional violations as follows:

[F] retained [Respondent] to bring an action to quiet title. The transaction was not completed for 20 months after it began.

[G]—[Respondent] was retained as attorney for the estate some time in the summer of 1971. He performed certain preliminary work but took no further action until 1974 when he filed the tax returns and paid the taxes. He then did nothing until early 1976, when he paid an additional penalty on the tax from his own funds. The estate continues to remain open of record.

[H]—[Respondent] received a fee as attorney for the estate in 1971 but did nothing until 1976.

The above does not include the names of the complainants in the two informal admonitions referred to on page 150 of this report. In addition, [Respondent] is named as defendant in three legal malpractice actions in which he has been charged with neglect of his professional responsibility. None of the plaintiffs in the malpractice actions

have filed complaints with the Office of Disciplinary Counsel to date.

It is to be noted of course that some of the matters in which [Respondent] was found to be delinquent at the second hearing before committee [   ] were in fact pending when [Respondent] testified before hearing committee [   ] at the very first hearing on the several disciplinary matters.

At the second hearing, that is, the one which took place on April 13, 1977, before hearing committee [   ] on matters relating to reinstatement and to additional charges, [Respondent] stipulated to the facts supporting most of the charges against him. At that hearing, he had little to say about the various charges by way of explanation. He did say, however:

". . . I have no defense. If I had a defense, I would then have engaged counsel in order to present my case before you people here. But I can apologize for what I did, but I cannot justify, never intend to. . . . I hope to God I have straightened out my thinking, put things in order, and straightened out my business and my personal life so that this thing will not occur again."

At the same hearing, [Respondent] spoke on his own behalf as follows:

"I know what I did is wrong. I realize the seriousness of it. I don't think anyone who's been under a suspension, unless he is a complete idiot, wouldn't realize the seriousness of the situation. And I do want to practice law. I think I am morally, morally fit and believe I am competent. . . . I ask you to please recommend that I be reinstated. If you do and I am reinstated, I assure you I will do everything in my power that I will never end up in this

room again because I don't want to . . . , it is unfair to the legal profession, which I do respect, and it is unfair to everyone involved."

Within just a few weeks of that statement, [Respondent] was reminded of another glaring case of neglect. He received a letter dated June 21, 1977 from [A], Esq., demanding that [Respondent] satisfy a lien on real estate dating back more than three years. It appears that in February, 1974, [Respondent] represented sellers in a real estate transaction. In the course of the title search, Attorney [A] discovered a lien on the property. At the closing, [Respondent] requested Attorney [A] to make the check payable to him, that is [Respondent], as attorney for the seller in the amount of $649, the amount that the creditor was willing to accept to satisfy the lien. [Respondent] wanted the check made payable in that fashion in order that he might further negotiate with the creditor to reduce the amount claimed. The check was delivered to [Respondent]. [Respondent] took no action whatsoever toward compromising the pay-off figure. He did not disburse the funds, he did not negotiate the check nor did he return it. Then on June 21, 1977, the matter was brought to his attention again and he immediately promised to do something about it. Nothing was done. In September, 1977, [A] complained to the Office of Disciplinary Counsel. When [Respondent] was notified that the complaint had been filed, he gave assurance to Disciplinary Counsel that the matter would be attended to. It was not. In fact, nothing was done until the lien was finally paid on April 21, 1978.

Hearing committee [ ] scheduled a hearing on Attorney [A]'s complaint and the same was set for June 21, 1979. At that hearing, [Respondent] had

no reasonable explanation for the delay in failing to discharge the lien or to return the check or to do any one of a number of things that would have been reasonble under the circumstances.

Since March, 1975, when the first petition for discipline was filed by Disciplinary Counsel, [Respondent] has been in frequent contact with the disciplinary system. [Respondent] has at no time denied any charge, challenged any factual determination or excepted to any recommendation. He has given no satisfactory explanation for violation of the several Disciplinary Rules with which he has been charged. His only defense was to say that he was sorry.

As petitioner for reinstatement, [Respondent] has not produced any evidence of his present fitness to practice law. He has made no effort to produce any testimony but his own concerning his moral qualifications, competency and learning in law. He has made no effort to improve his legal skills or to keep abreast of developments in any field of the law. He has not subscribed to legal publications nor to the advance sheets. He has limited his continuing legal education efforts to occasionally reading the advance sheets he finds in the law library of the [   ] city solicitor between workmen's compensation hearings at which he acts as referee.

At the hearing of June 21, 1979, [Respondent] was asked certain questions:

"Q. I ask you at this time, since the hearing of April '77, have you attended any formal or informal sessions of continuing legal education sponsored by any agency such as a county bar or a state bar or any other bar association or educational institution?

A. Except for Workmen's Compensation, no.

Q. Have you taken any steps, up to the present

time, to keep abreast of statutory changes in the law of, for instance, estates, elections to take against wills, the Judicial Code revisions of June, 1978, etc.?

A. No.

Q. Isn't it true, Mr. [Respondent], that a large proportion . . : of the many, many incidents that got you into difficulty with the Disciplinary Board pertain to estate work, estates that you had undertaken, delayed, forgetting to file the papers and so on?

A. Yes.

Q. And so a large portion of your practice had been estates; is that correct?

A. Yes, I would say so.

Q. And you are not familiar with any statutory changes that have come about in the last two years regarding estates, that you are not immediately familiar with the facts of them?

A. No, no, but I will certainly find out."

It appears that [Respondent] has no understanding of the Rules of Disciplinary Enforcement nor does he understand what is required of him in order to qualify for reinstatement as a lawyer. He offered no testimony from any witness concerning his present fitness to return to the practice of law. He excused himself from this responsibility by simply saying that he was reluctant to compromise the attorneys who practiced before him as a workmen's compensation referee by asking them to appear on his behalf.

He has not carried the burden of proof imposed upon the formerly admitted attorney in a reinstatement proceeding.

"A reinstatement proceeding is a searching inquiry into a lawyer's present professional and moral

fitness to resume the practice of law. The object of concern is not solely the transgressions which gave rise to the lawyer's suspension or disbarment but rather the nature and extent of the rehabilitative efforts he has made since the time the sanctions were imposed, and the degree of success achieved in the rehabilitative process. . . ." Philadelphia Newspapers, Inc. v. Disciplinary Board of the Supreme Court of Pennsylvania, 468 Pa. 382, 385, 363 A. 2d 779 (1976).

When [Respondent]'s initial suspension from the practice of law was recommended in August of 1976, this member of the Disciplinary Board wrote: "It is the opinion of the Board that Respondent's fitness to act as a court officer is in serious question and that a period of suspension of three months should be imposed upon him as a reminder to the Respondent of the serious nature of his delinquencies in the past and his responsibility to improve his relationship with his clients and performance of his duties in the future." Report and Recommendation dated August 3, 1976. [Respondent]'s fitness to act as a court officer is still in serious question. And he has done little or nothing in any of the proceedings over the last five years to change the opinion of the members of this board that he currently has not met his burden of proving his present fitness to return to the practice of law.

## RECOMMENDATION

At 20 D.B. 1975, this board recommends to your honorable court that the petition for reinstatement be denied and that [Respondent] not be reinstated at this time and that the court direct that the necessary expenses incurred in the investigation and processing of the petition for reinstatement be paid

160

by [Respondent], petitioner. A statement of such expenses is appended to this report.

## ORDER

EAGEN, *C.J.*, And now, April 24, 1980, the recommendation of the Disciplinary Board of the Supreme Court of Pennsylvania dated April 15, 1980, is accepted and the petition of respondent for reinstatement is denied.

The expenses incurred by the board in the investigation and processing of the petition for reinstatement shall be paid by respondent.