FRIEDMAN, Member,
Pursuant to Pennsylvania Rule of Disciplinary Enforcement 218(c)(5), the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with ■ respect to the above-captioned petition for reinstatement.
*515 HISTORY OF PROCEEDINGS
Petitioner, [ ], was suspended by the Supreme Court of Pennsylvania for a period of one year effective on September 2, 1985. The term of suspension imposed by the court expired on September 2, 1986.
On July 17, 1989 petitioner filed his petition for reinstatement with the Disciplinary Board. On July 24, 1989 the petition was referred to Hearing Committee [ ], consisting of [ ]. On June 6, 1990 a hearing was held before the hearing committee at which time petitioner was represented by'[ ], Esq., and the Office of Disciplinary Counsel was represented by assistant disciplinary counsel [ ]. On June 15, 1990 the hearing committee filed its report unanimously recommending reinstatement with conditions. On July 5, 1990 Disciplinary Counsel filed its brief on exceptions. On July 31, 1990 petitioner filed his brief in opposition to disciplinary counsel’s brief on exceptions.
FINDINGS OF FACT
(1) Petitioner is 42 years of age. He received his A.B. degree from [ ] College in May 1970 and graduated from [ ] University School of Law in June 1975. (Petitioner’s reinstatement questionnaire at 1.)
(2) Petitioner has been married to [A] since 1973 and they are the parents of four children, ages nine through 14. (N.T. 8.)
(3) In September 1977 petitioner became affiliated with [B], Esq., in the practice of law. They maintained an office at [ ]. In October 1983 [B] died and petitioner continued the firm as a sole practitioner *516 until his suspension by the Supreme Court of Pennsylvania. (Petitioner’s reinstatement questionnaire at 3.)
(4) On October 2, 1984 a petition for discipline was filed with the Disciplinary Board charging petitioner with violations of Disciplinary Rule 1-102(A)(4), dealing with conduct involving dishonesty, fraud, deceit or misrepresentation, and Disciplinary Rule 6-101(A)(3), dealing with conduct involving neglect of a legal matter entrusted to an attorney. The violations arose out of nine separate matters handled by petitioner. On November 20, 1984 the Office of Disciplinary Counsel and petitioner entered into a stipulation by which petitioner effectively admitted the allegations.
(5) The allegations which were the subject of the stipulation established a pattern of misconduct. On each occasion petitioner accepted the case and then failed to take appropriate steps to promote his client’s interests. Petitioner furthermore repeatedly misrepresented the case status to his clients and even took rather elaborate steps to cover up his lack of progress.
(6) On June 9, 1985 a hearing was held before Hearing Committee [ ]. Petitioner offered the testimony of [C], Ph.D., a licensed psychologist, who testified that petitioner was a “passive/aggressive personality.” Dr. [C] furthermore testified that petitioner was amenable to treatment.
(7) On March 28, 1985 the hearing committee recommended that petitioner be suspended for a period of four months. Neither side took exceptions to the findings or recommendations of the hearing committee.
(8) On June 19, 1985 the Disciplinary Board recommended that petitioner be suspended for a period of one year.
*517 (9) On August 2, 1985 the Supreme Court of Pennsylvania suspended petitioner for a period of one year effective. September 2, 1985.
(10) On June 6, 1990 a hearing was held before Hearing Committee [ ] to consider the petitioner’s petition for reinstatement.
(11) During the first full year of his suspension (1986), petitioner continued his service as a captain in the United States Army Reserves which involved approximately two to three days’ commitment per week. (N.T. 9.)
(12) In 1987 petitioner worked part-time for [D], Esq., as a research assistant and as an office administrator. (N.T. 10, 89.) Petitioner subsequently accepted employment as a professional fund-raiser with the [E]. (N.T. 11, 12.)
(13) After leaving the [E] petitioner worked as an estimator and management consultant. (N.T. 13.) In January 1989 he was hired by [F] in [ ] as a fund-raiser. (N.T. 14.)
(14) In October 1989 petitioner accepted employment with the [G] Foundation as a fund-raiser. (N.T.
14.) He is currently employed in that capacity. (N.T.
15.)
(15) Petitioner and his wife had a joint income of $10,972 in 1986 (N.T. 10), $14,800 in 1987 (N.T. 11), $25,400 in 1988 (N.T. 16), and $22,000 in 1989 (N.T. 66).
(16) Following his suspension, petitioner had three lawsuits filed against him. ([H] v. [Petitioner]; [I] v. [Petitioner] and [J] v. [Petitioner].) (N.T. 30-7; petitioner’s reinstatement questionnaire 10, 10a.) The [H] suit was also the subject of a complaint with Office of Disciplinary Counsel. The other suits were based upon legal malpractice claims but were not filed with the Office of Disciplinary Counsel.
*518 (17) There were four additional complaints filed with the Office of Disciplinary Counsel which were not a basis for petitioner’s suspension. The complaints were the subject of a stipulation entered into between the Office of Disciplinary Counsel and petitioner and were admitted at the reinstatement hearing. The complaints were similar in nature to the original charges for which petitioner was suspended and occurred during the same time period. The [H] complaint was incorporated into the stipulation.
(18) Petitioner and [H] agreed to settle their claim for $6,000. On July 2, 1987 petitioner paid the amount of $2,000 to the [Hs]. The balance of $4,000 was reduced to judgment by consent. (N.T. 30, 31.) Petitioner testified that the $4,000 judgment was a lien on property being sold at sheriff sale. (N.T. 33.) He furthermore indicated that if it were not satisfied at sheriff sale that he would satisfy the judgment. (N.T. 34.)
(19) Petitioner and Mr. and Mrs. [I] agreed to settle that case for $7,500. On June 29, 1987 they entered into a “judgment by agreement” before the Court of Common Pleas of [ ] County, Pennsylvania. On June 29, 1987 petitioner paid the [Is] the amount of $2,500 as per the terms of the agreement. (N.T. 35-6.)
(20) The [J] case was filed in 1986 with the Court of Common Pleas of [ ] County. No action has been taken for approximately four years. (N.T. 44.)
(21) Petitioner completed eight Pennsylvania Bar Institute courses in connection with his petition for reinstatement. He furthermore reviewed several treatises in the areas of real estate and estate administration and taxation. (N.T. 28-30.) Petitioner further reviewed the Rules of Professional Conduct. (N.T. 62.)
*519 (22) Petitioner consulted with [K], Ph.D., a licensed psychologist, in April 1990. Dr. [K] conducted a battery of psychological tests and concluded that there was no psychological reason why petitioner could not resume his profession. (N.T. 79.) Dr. [K] furthermore found that petitioner was not now in need of any additional treatment or counselling. (N.T. 77, 78.)
DISCUSSION
The reinstatement process is a “searching inquiry into a lawyer’s present professional and moral fitness to resume the practice of law.” Philadelphia News Inc. v. Disciplinary Board, 468 Pa. 382, 363 A.2d 779 (1976). The burden is on petitioner to demonstrate:
“[B]y clean and convincing evidence that such person has the moral qualifications, competency and learning in law required for admission to practice law in this Commonwealth and that the resumption of the practice of law within the Commonwealth by such person will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive of the public interest.” Pa. Rule of Disciplinary Enforcement 218(c)(3)(i).
Petitioner was suspended from the practice of law for a series of similar incidents in which he accepted employment yet failed to complete the necessary work. He frequently misled his clients and even concocted rather elaborate schemes to give the appearance of progress being made on the case. Prior to suspension petitioner sought professional psychological intervention. He was diagnosed by Dr. [C] as having a passive/aggressive personality.
*520 As the hearing committee recognized, petitioner waited almost three years to file for reinstatement. The testimony revealed that during that period of time petitioner completed counselling. He was given a clean bill of health from Dr. [K], who described him at the hearing as a “responsible, concerned, healthy, emotionally healthy individual.” (N.T. 76.) Petitioner is currently gainfully employed as a professional fund-raiser and he and his wife support their four children who reside with them. Petitioner is active in his church and in the community. (N.T. 25.) He also received a very favorable recommendation from a member of the bar, [D], Esq. (N.T. 90-1.) Petitioner testified that he has kept current in those areas of the law in which he proposes to practice. He has also viewed multiple PBI video courses. He furthermore indicated that he has reviewed the Rules of Professional Conduct.
The hearing committee unanimously ruled that petitioner had met his burden. The committee recommended reinstatement. The committee, however, recommended that reinstatement be conditioned upon petitioner either satisfying two outstanding judgments or entering into a repayment schedule.
The Office of Disciplinary Counsel excepted to the hearing committee’s recommendation. The Office of Disciplinary Counsel avers that the outstanding obligations indicate that defendant has failed to prove that he has the proper moral qualifications and that his resumption of the practice of law would be neither detrimental to the integrity of the bar or the administration of justice. The board disagrees.
Petitioner readily acknowledged his indebtedness to the [Hs] and to the [Is]. In June 1987 he agreed to pay the [Hs] the sum of $6,000. He paid them $2,000 *521 and stipulated to the entry of judgment in the amount of $4,000. The [I] matter was also resolved in June 1987. Petitioner and the [Is] entered into a consent judgment whereby the [Is] were paid $2,500 and a personal note was provided them by petitioner in the amount of $5,000.
Petitioner testified that he has been financially unable to make payments on the judgments. (N.T. 36.) He stated, however, that he anticipates a substantial increase in salary and expects to satisfy the judgments within the next two years. (N.T. 37.) He furthermore explained to the committee that the [Hs] may be satisfied from the proceeds of a pending sheriffs sale on property which he owned with his now-deceased law partner.
The board concurs in the Office of Disciplinary Counsel’s and the hearing committee’s interest in having the judgments satisfied as expeditiously as possible. However, petitioner and his wife have enjoyed only very modest earnings since petitioner’s suspension. In fact, in 1987 when petitioner made the payments described above, he and his wife had joint income of $14,800. Their income in 1988 was $25,400 and in 1989, $22,000. The testimony indicated that [petitioner and his wife] live modestly and have four children to support. Under these circumstances, the failure to satisfy the judgments does not reflect adversely upon the petitioner’s moral qualifications to practice law. In re Anonymous Nos. 26 D.B. 73 and 32 D.B. 73, 45 D.&C. 3d 172, 179 (1986). The board is furthermore satisfied that petitioner’s reinstatement would be neither detrimental to the integrity and standing of the bar or the administration of justice nor would it be subversive of the public interest.
*522 CONCLUSIONS OF LAW
The Disciplinary Board of the Supreme Court of Pennsylvania concludes that petitioner has demonstrated by clear and convincing evidence that he has both the moral qualifications and the competency and learning in the law required for admission to practice law in this Commonwealth. The board further finds that petitioner’s resumption of the practice of law will not be detrimental to the integrity and standing of the bar or the administration of justice nor subversive of the public interest.
RECOMMENDATION
The Disciplinary Board respectfully recommends to the Supreme Court of Pennsylvania that the petition for reinstatement to the practice of law in the Commonwealth of Pennsylvania be granted.
The board further recommends that petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement. Pa.R.D.E. 218(e).
Dr. Gilbert dissents and would recommend the reinstatement be denied.
Ms. Heh and Mr. Eckell did not participate in the adjudication.
ORDER
And now, November 27, 1990, upon consideration of the report and recommendations of the Disciplinary Board dated September 4, 1990, the petition for reinstatement is granted.
Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board *523 in the investigation and processing of the petition for reinstatement.