In re Anonymous No. 56 D.B. 94

Disciplinary Board Docket no. 56 D.B. 94.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

NIX III, *Member,* October 13, 1999—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

By order of the Supreme Court of Pennsylvania dated March 24, 1994, a rule was issued to show cause why petitioner, having been convicted in the Court of Com-

mon Pleas of [ ] County of 21 counts of theft by failure to make required disposition of funds received in violation of 18 Pa.C.S. §3927, should not be placed on temporary suspension.

By order of the Supreme Court of Pennsylvania dated June 10, 1994, respondent was placed on temporary suspension and ordered to comply with all the provisions of Rule 217, Pa.R.D.E., and the matter was referred to the Disciplinary Board pursuant to Rule 214(f)(1), Pa.R.D.E.

By order of the Supreme Court of Pennsylvania dated November 30, 1995, petitioner was suspended from the practice of law for three years, retroactive to June 10, 1994.

On November 30, 1998, a petition for reinstatement was filed.

On December 2, 1998, an amendment to petition for reinstatement was filed by [ ], Esquire, counsel for petitioner.

On December 2, 1998, the matter was referred to Hearing Committee [ ], consisting of [ ], Esquire, chair, and Members [ ], Esquire and [ ], Esquire.

A hearing on the petition was held on March 23, 1999.

The Hearing Committee filed its report on August 6, 1999, recommending petitioner's reinstatement to active status. Neither party filed exceptions to the Hearing Committee report.

The matter was adjudicated at the August 18, 1999 meeting of the board.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, [ ], is a 43-year-old graduate of [ ] College. Petitioner was admitted to the Pennsylvania Bar

in June 1981. After graduating law school, petitioner worked as a volunteer for the [A] County Legal Aid in 1981 and 1982. She then worked at the law offices of [B] in 1982 and 1983; [C] from 1983 to 1986; and [D] until 1987. From 1987 to 1991, petitioner worked for [E], Esquire.

(2) Petitioner began the use of cocaine during her last weekend of law school, Memorial Day, 1980. Between 1980 and 1987, she became addicted to cocaine.

(3) In August 1991, [E] learned that petitioner had taken checks from his practice, and had cashed and deposited them in her own account. Petitioner was arrested and charged on December 8, 1992. On December 1, 1993, petitioner reached an agreement with [E], under which she would pay him $55,000 (without interest) over a 10-year period, and assign to him one-half of any referral fees generated by two litigation matters she had referred to other law firms. On December 1, 1993, petitioner entered into a negotiated plea in which she pled guilty to 21 separate counts of theft by failure to make required disposition of funds received, in violation of 18 Pa.C.S. §3927, a misdemeanor. That same day, the Court of Common Pleas of [  ] County imposed a sentence which included:

(a) 48 months probation;

(b) $250 fine;

(c) restitution in the amount of $10,468; and

(d) 200 hours of community service.

(4) By order of the Supreme Court of Pennsylvania dated June 10, 1994, petitioner was placed on temporary suspension and ordered to comply with all the provisions of Rule 217, Pa.R.D.E., and the matter was referred to the Disciplinary Board pursuant to Rule 214(f)(1), Pa.R.D.E.

(5) The petitioner was found by this board to have violated R.P.C. 8.4(b) and R.P.C. 8.4(c).

(6) On November 30, 1995, the Supreme Court of Pennsylvania ordered petitioner suspended from the practice of law for a period of three years, retroactive to June 10, 1994.

(7) The theft of the monies from [E] by petitioner was in support of her cocaine habit. The money was spent on cocaine and she had no assets left to show for it.

(8) Petitioner attended and completed an inpatient drug program at [F] Institute and continued with therapy, along with AA and NA meetings.

(9) Between 1993 and 1997, petitioner reported to and cooperated with her probation officer, [G]. During that period of time, random urinalysis were taken and all were negative. Petitioner complied with all the rules and regulations of her probation. She paid all court-ordered restitution ($10,468). She also performed 200 hours of community service at [F] Institute, the public library, [H] Hospital and Town Watch.

(10) Petitioner remains in contact with [I], her preorder sobriety monitor, and maintains a sponsor at AA.

(11) Petitioner has been a patient of a licensed psychologist, Dr. [J], since September 1995, after she had completed her drug abuse program. Petitioner's initial diagnosis was dysthymia, which is a mild form of depression, changing to adjustment disorder, with mixed features of anxiety and depression. Dr. [J] believes that these conditions do not exist anymore.

(12) Dr. [J] has not seen any evidence of a return to alcohol or drug use, or a change in personality that might indicate a return to alcohol or drug abuse. Dr. [J] believes that he has seen the opposite and opines that peti-

tioner has learned her lesson well and is a responsible person and a responsible mother. (N.T. pp. 18-19.) Petitioner's ability to provide care to her son, who is handicapped, shows that she has learned to cope with her problems, and Dr. [J] further believes that she is psychologically fit to return to the practice of law.

(13) Petitioner worked briefly as an administrative assistant at [K] between September 1995 and November 1995.

(14) Petitioner was divorced on November 28, 1995. At the time of the divorce, she had a very bleak financial picture. Petitioner's debts totaled approximately $100,000, including $55,000 owed to [E]. Her financial situation was the primary cause of her divorce. She left the marriage with only $10,000 plus the security deposit for an apartment.

(15) Petitioner's total gross income for the three years 1994, 1995 and 1996 was about $81,000 combined.

(16) On November 28, 1995, petitioner began employment at [L], a personnel placement agency. She passed the Pennsylvania licensing exam for employment counselors in 1996 and now works as an employment counselor for [L]. Her employer provided a letter indicating that petitioner is a hardworking, dedicated and loyal employee; she is reliable and her attendance is excellent; she is also able to generate many referrals because of her positive attitude and strong work ethic.

(17) In 1997, petitioner's gross income from [L] was about $64,000. In 1998, her gross income from [L] was about $80,000, and she grossed $34,000 from the [M] referral fee. (N.T. pp. 156-57.) She is also a [N] representative.

(18) As of May 1998, petitioner had made 43 payments to [E] totaling $12,078. According to the terms of

the agreement petitioner executed on December 1, 1993, she should have paid $24,000 by that date. [E] made numerous efforts to collect the remaining money owed to him.

(19) Petitioner admitted that she did meet the financial arrangement she had made with [E] as a result of paying off other debt. By the date of the hearing, petitioner had paid off all but $5,000 of the debt owed to creditors other than [E]. She never intended to avoid the debt to [E] and considered this repayment a part of her rehabilitation.

(20) Negotiations between petitioner and [E] to settle this claim in full began in July of 1998, after the receipt of a $68,000 referral fee in the matter of [M], which petitioner shared with [E] equally. That fee was far more than either party expected, and petitioner immediately notified [E] of the receipt of the fee. Petitioner and [E] discussed the possibility of a lump sum payment as a means of reaching a settlement. [E] proposed a lump sum of $33,000 for the settlement, but it took several months of negotiations to reach an agreement on the amount of the lump sum. Petitioner also provided [E] with evidence of an insurance policy on her life with [E] named as beneficiary.

(21) After receiving her $34,000 share of the [M] referral fee, petitioner paid the Disciplinary Board, her attorney and about $17,800 owed on revolving credit cards. Petitioner's aging car failed during this period, and she had to replace it with a used car.

(22) Petitioner then directed her attorney to resolve the matter with [E]. Negotiations took a positive turn once counsel was involved.

(23) The arrangements to settle [E's] outstanding claim were finally completed on March 23, 1999. Petitioner's

family offered collateral to secure the debt and her father did so only because he felt certain that his daughter had finally gotten her addiction under control.

(24) [E] testified that the settlement between him and petitioner was fair. By receiving $30,000 within days of the hearing for reinstatement, [E] would actually be receiving more than the previous payout agreement had required, because that agreement did not call for any interest payments.

(25) Petitioner testified that she feels horrible about what she had done to [E] and that repaying [E] was one of the most important things in her life. The impact of completing restitution on reinstatement was not her primary reason for repaying this debt. It had more to do with her coming to terms with what she had done to [E].

(26) Petitioner has no hesitancy in believing in her capability to return to the practice of law, and states that she is not the same person she was when she began using drugs.

(27) Petitioner shares custody of her son with her ex-husband. She now lives with her son, [O], age 6. [O] has a disability called "apraxia" that has caused delays in his speech. Petitioner is a responsible mother.

(28) Petitioner has taken 36 credits of continuing legal education including the "Essentials of Pennsylvania Practice" course in December 1997. She regularly reads the *Pennsylvania Reporter* and [    ], and has maintained a subscription with the *[    ] County Law Reporter* as well as maintaining links on her computer to the Superior Court and other law sites.

(29) Petitioner formerly had a general practice. She has made no specific plans for returning to the practice of law, but would like to begin a practice slowly while continuing her work as an employment counselor because of financial obligations.

(30) If reinstated, petitioner intends to again volunteer for [A] County Legal Aid, the group she had worked for in 1981 and 1982.

(31) There was an omission in petitioner's reinstatement questionnaire. The questionnaire did not mention a civil action filed by petitioner in 1992 against [E], alleging defamation. This action was settled as part of the December 1993 agreement between petitioner and [E]. Petitioner testified that this was an unintentional omission. This action was part of petitioner's original disciplinary action record and was discussed in her disciplinary proceeding before the board in 1995.

(32) Several individuals also testified at the hearing of this matter on behalf of the petitioner, including: [P], [Q], Esquire, [G], [R], [S], [T], [U], [V], [W], and petitioner's father, [X].

(33) Summarizing the witnesses' testimony, petitioner has candidly told others about her prior conduct and criminal conviction. (N.T. pp. 30-31, 37-38, 88-89, 94, 99-100, 108, 112.) She has expressed remorse for her conduct. (N.T. pp. 22-23, 37-38, 89.) Petitioner has developed a reputation as a hard worker, having honesty and integrity. (N.T. pp. 37-38, 88, 94, 99-100, 108, 113, 122, 177.)

(34) Several witnesses, including [E], testified that they would not have any hesitancy in dealing with petitioner as an attorney if she is readmitted. (N.T. pp. 43, 68, 90, 95, 109.) Her former employer, [E], never had any problem with petitioner's representation of clients, and three of the witnesses testified that they would not hesitate to use her as their attorney should they require legal services.

## III. CONCLUSIONS OF LAW

At the time petitioner committed the misconduct that resulted in her suspension, she was suffering from an addiction to cocaine.

There was a cause-effect relation between petitioner's addiction and her conversion of client and firm funds.

The misconduct for which petitioner was suspended, although deplorable, is not so egregious as to preclude present consideration of her petition for reinstatement.

Permitting petitioner once again to enjoy the privilege of practicing law in this Commonwealth would not denigrate the public's perception of the bar, and will demonstrate that the bar's application of its disciplinary standards is in accordance with reality and sensitivity to public safety.

Petitioner has demonstrated by clear and convincing evidence that she has the present moral qualifications, competency and learning in the law required for reinstatement to the practice of law.

The resumption of the practice of law within the Commonwealth by petitioner will be neither detrimental to the integrity and standing of the bar, or harmful to the administration of justice nor subversive of the public interest.

## IV. DISCUSSION

Any petitioner seeking reinstatement of the privilege to practice law in this Commonwealth has the burden of proving by clear and convincing evidence, that the petitioner has the moral qualification, competency and learning in the law, so that his or her resumption of the practice of law would not be detrimental to either the integrity and standing of the bar or to the administration

of justice. Further, a petitioner's resumption of the practice of law must not be perceived as being subversive to the public interest. Pa.R.D.E. 218(c)(3)(I).

The sole question before this board is whether this petitioner's request for reinstatement to the bar of the Commonwealth of Pennsylvania should be granted. The reinstatement proceeding involves a study of the nature and extent of the rehabilitative efforts she has made since the time the sanctions were imposed, and the degree of success achieved in the rehabilitative process. *Philadelphia Newspapers Inc. v. Disciplinary Board,* 468 Pa. 382, 385-86, 363 A.2d 779, 780-81 (1976).

The Hearing Committee determined that petitioner has been successful in combating and overcoming her chemical dependence and shows no signs of resuming the substance abuse that she had engaged in that led to her misconduct and suspension. She has learned that she can handle the uncertainties of life without using drugs as a crutch, and continues to maintain and support Narcotics Anonymous to keep her addiction under control.

The issue before this board is whether the petitioner possesses the moral character necessary to resume the practice of law. A petitioner may prove the requisite moral qualifications through the introduction of favorable character testimony by well-respected sources. *In re Anonymous No. 99 D.B. 84,* 14 D.&C.4th 342, 357 (1991); *In re Anonymous No. 24 D.B. 84,* 14 D.&C.4th 235, 244 (1991). The Hearing Committee concluded, and this board agrees, that the petitioner has presented uncontroverted evidence by way of testimony attesting to her favorable character from both a member of the bar and persons in the community. A letter from the petitioner's employer was also presented as evidence of her character.

The testimony proved that petitioner has again become a productive member of society. She has become a valued employee and is highly regarded by many friends. A common thread in the character witnesses' testimony is that petitioner has built herself a reputation for honesty and integrity. She has also been a responsible parent for her son.

It has also been proven that petitioner has taken action to maintain her competency and learning in the law in accordance with sections 89.275(a)(15) and 89.279(a) of the Disciplinary Board Rules. Petitioner has shown remorse for her conduct. This was evident in her testimony, in her statements to character witnesses, in her statements to [E], and in her discussions with her therapist.

The sole issue raised by the Office of Disciplinary Counsel that impacts on the petitioner's moral character was her failure to immediately pay some of the monies owed to [E], upon her receipt of a referral fee from the [M] case, together with the timing of petitioner's settlement with [E] which took place on the eve of the reinstatement hearing. This board, after reviewing the findings of the Hearing Committee, together with its own review of petitioner's financial records, concludes that at no time did petitioner lack an intention to repay [E]. [E's] debt was not petitioner's sole financial obligation and her decision to pay other debts should not be held against her. Further, petitioner was willing to resort to asking her family to help her repay her debts. The $30,000 mortgage of her retired father's home, which she used to complete the restitution payment to [E], is evidence of her intention to repay all of her debts.

It is well-settled law that where a petitioner has unpaid debts due to an inability to pay, rather than intent

not to pay, the unpaid debts do not preclude readmission to the bar. See for example, *In re Anonymous No. 82 D.B. 84,* 8 D.&C.4th 514 (1990), in which the petitioner's inability to complete payments on existing judgments was considered by this board and did not preclude the petitioner's reinstatement, based at least in part on the petitioner's intention to repay these debts over the next two years. The Supreme Court granted the petition for reinstatement.

Also see, *In re Anonymous No. 76 D.B. 82,* 14 D.&C.4th 371 (1991), in which the petitioner had an outstanding malpractice claim and the Hearing Committee recommended conditional reinstatement subject to the petitioner satisfying the debt. Prior to a decision by this board, the petitioner satisfied the debt and this board recommended reinstatement which was granted by the Supreme Court.

The instant case is clearly distinguishable from *In re Anonymous No. 74 D.B. 89,* (1996), in which the petitioner's income during his period of suspension was substantial, and his home was titled to a family friend, even though the petitioner paid the monthly obligations. The petitioner also drove an automobile which was titled to his mother, although the petitioner made the payments on the vehicle. The petitioner also defaulted on credit cards incurred during his suspension and owed the Disciplinary Board for the costs of his disciplinary proceeding. His petition for reinstatement was denied.

In the instant case, the record shows a pattern of 43 payments by petitioner over the first four years following the initial restitution agreement between her and [E]. Although less than the agreed upon amount, the petitioner has clearly shown her intention to make restitution, even though these payments were less than the

agreed to amount. There was also a lapse in 1998, where no payments were made, immediately preceding the outcome of the [M] case. Petitioner, immediately upon learning of the referral fee in the [M] case, negotiated a lump sum payment to [E] that would satisfy her outstanding obligation to him.

This board agrees with the Hearing Committee's determination that these negotiations were made in good faith and did not involve any intent to avoid or delay payment. It is indeed noteworthy that [E] himself acknowledged that he was getting more (present value) from the $30,000 lump sum payment than he would have received from the interest-free payment schedule. This negotiation of a lump sum payment in no way shows any lack of moral qualifications.

This board does take notice of the timing of the payment, being on the eve of the reinstatement hearing. However, this board agrees with the Hearing Committee's finding that these negotiations were conducted by petitioner's counsel in good faith. Such negotiations, even if they happen to reach conclusion on the eve of a hearing, should not reflect any negative light on the petitioner. Given the numerous hurdles she has had to leap, this board is convinced that petitioner's moral qualifications to practice law are not in question.

If this board were to consider Disciplinary Counsel's charge that petitioner's payment of this debt at the 11th hour is a flaw in her moral qualifications, we would put an impossible burden on any future petitioner who might seek reinstatement while burdened by debts that he or she is unable to pay. Such an approach to the reinstatement process would be patently unfair and, in the opinion of this board, improper. (See *In re Anonymous No. 82 D.B. 84,* 8 D.&C.4th 514 (1990).)

Disciplinary Counsel also raises the issue of petitioner's omission of certain information from her reinstatement questionnaire. The questionnaire failed to mention that, prior to the disciplinary proceeding that led to her suspension, she had filed a civil action naming [E] as defendant. This board agrees with the Hearing Committee that this omission is not sufficient to deny petitioner's request for reinstatement. (See *In re Anonymous No. 3 D.B. 96,* 171 disciplinary docket no. 3 (1998).) "A defective questionnaire should not be a bar to readmission where petitioner testified at the hearing and fully explained any discrepancies." Also see, *In re Anonymous No. 60 D.B. 75,* 18 D.&C.3d 640 (1981), wherein the petitioner omitted from his questionnaire three civil actions to which he was a party. These omissions were found not to be relevant to the reinstatement. In the instant case, the petitioner testified that the omission was inadvertent and that the information was before the board at the time that she was suspended from the practice of law and was presumably taken into consideration by the board at that time.

This board finds that the petitioner has met her burden and shown that she possesses the requisite moral qualifications to be reinstated to the practice of law in the Commonwealth of Pennsylvania. We also find that the petitioner's resumption of her practice of law would not be detrimental to the integrity and standing of the bar or the administration of justice, nor will it be subversive of the public interest.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that petitioner, [   ], be reinstated to the practice of law.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement.

Board Member Rudnitsky did not participate in the August 18, 1999 adjudication.

### ORDER

And now, December 9, 1999, upon consideration of the report and recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania dated October 13, 1999, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.