## In re Anonymous No. 114 D.B. 95

Disciplinary Board Docket no. 114 D.B. 95.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

SCHULTZ, *Member,* March 19, 2001—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

Petitioner, [    ], filed a petition for reinstatement to the bar of Pennsylvania on December 27, 1999. Petitioner was suspended from the practice of law in Pennsylvania for five years retroactive to August 16, 1995 by order of the Supreme Court of Pennsylvania dated June 23, 1999.

A reinstatement hearing was held on June 13, 2000, before Hearing Committee [   ] comprised of Acting Chair [   ], Esquire, and Members [   ], Esquire and [   ], Esquire. Petitioner was represented by [   ], Esquire. Office of Disciplinary Counsel was represented by [   ], Esquire.

The committee filed a report on August 25, 2000 and recommended that the petition for reinstatement be granted.

No briefs on exceptions were filed by the parties.

This matter was adjudicated by the Disciplinary Board at the meeting of September 26, 2000.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner was born in 1940 and was admitted to the practice of law in Pennsylvania in 1969. His address is [   ]. His current business address is [   ].

(2) Petitioner was suspended from the practice of law by order of the Supreme Court of Pennsylvania dated June 23, 1999. This suspension was for a period of five years retroactive to August 16, 1995, the date of petitioner's temporary suspension.

(3) The misconduct underlying petitioner's suspension was his conviction of one count of mail fraud in 1995. As a result of that conviction, petitioner was sentenced to 14 months incarceration and a fine of $25,000, as well as supervised release for two years.

(4) Since petitioner's release from prison he has been involved in numerous pro bono activities with various organizations, including prison advocacy groups.

(5) Petitioner was elected to the boards of the [  ], [  ], and the [  ].

(6) Petitioner has made at least 30 public addresses to various groups in Pennsylvania and Washington, D.C. on the topics of his prison experience, prison reform, and the death penalty.

(7) Petitioner has been employed as a paralegal with his brother's law firm as well as a paid lobbyist for a prison reform group.

(8) Petitioner has not held himself out as a practicing lawyer during his suspension. He has maintained his knowledge in the law by reading advance sheets, doing research and writing briefs, and reviewing legal publications and documents.

(9) Petitioner fulfilled his required continuing legal education courses for reinstatement.

(10) Twenty-three character witnesses testified on behalf of petitioner. These individuals testified to petitioner's reputation as a truthful, honest, and law-abiding person. They noted petitioner's remorse and the dramatic change in his life since his release from prison.

(11) These witnesses had no hesitation in recommending petitioner's reinstatement to the practice of law.

(12) In excess of one hundred letters were submitted in support of petitioner's reinstatement, including letters from inmates and from prominent people.

(13) Petitioner expressed sincere remorse for his wrongdoing. He has attempted to rectify his wrongs through his work on prison and death penalty issues. He

has actively worked to change the negative public perception of him.

(14) If reinstated, petitioner plans to practice with his brother's law firm in the area of general practice and criminal defense. He plans to continue his work on prison reform and death penalty review, as well as lobbyist activities.

## III. CONCLUSIONS OF LAW

(1) Petitioner has proven that he has the moral qualifications, competency and learning in the law required to practice law in Pennsylvania.

(2) Respondent's resumption of the practice of law will be neither detrimental to the integrity and standing of the bar or administration of justice nor subversive of the public interest.

## IV. DISCUSSION

This matter is before the Disciplinary Board on a petition for reinstatement filed by petitioner. Petitioner was suspended for five years retroactive to August 16, 1995, pursuant to Supreme Court order of June 23, 1999.

Pursuant to Rule 218(a), Pa.R.D.E., an attorney who is suspended for a period exceeding one year may not resume practice until reinstated by order of the Supreme Court of Pennsylvania. In order for petitioner to gain reinstatement, he has the burden of proving by clear and convincing evidence that he possesses the moral qualifications, competency and learning in the law required for admission to practice in this Commonwealth. In addi-

tion, petitioner has the burden of demonstrating that his resumption of the practice of law will not be detrimental to the integrity and standing of the bar or the administration of justice, nor subversive of the public interest. Rule 218(c)(3)(I), Pa.R.D.E.

A reinstatement proceeding is a searching inquiry into a lawyer's present professional and moral fitness to resume the practice of law. The object of concern is not solely the transgressions which gave rise to the lawyer's suspension, but rather the nature and extent of the rehabilitative efforts the lawyer has made since the time the sanction was imposed, and the degree of success achieved in the rehabilitative process. *Philadelphia Newspapers Inc. v. Disciplinary Board of the Supreme Court,* 468 Pa. 382, 363 A.2d 779 (1976).

Petitioner was suspended as a result of his conviction of one count of mail fraud. At the time petitioner entered his guilty plea, he was the [ ] of the Commonwealth of Pennsylvania, which position he resigned shortly after he entered his plea. The gravamen of petitioner's crime was that illegal cash contributions were made to petitioner's campaign committee which were improperly reported in the campaign finance report required by law to be filed with the Pennsylvania Bureau of Elections.

Petitioner presented conclusive evidence that he has rehabilitated himself. Twenty-three character witnesses were produced at the hearing as well as 120 character letters from persons representing all walks of life. Petitioner also testified, thus providing a clear picture of his life since his guilty plea, incarceration, and suspension from the practice of law. Petitioner has not sat idly by

during his suspension. He has devoted countless hours, some voluntary, some compensated, to issues involving prisoners' rights and prison reform and the death penalty. This involvement was in the nature of writing briefs, meeting with individuals, participating with groups, and lobbying the legislature.

The witnesses detailed the accomplishments of petitioner during his suspension and the positive impact he has made not only on the issues in which he became involved, but on the lives of the people with whom he has worked. All of the witnesses unhesitatingly supported petitioner's return to the practice of law and agreed that petitioner's reinstatement would be beneficial to the legal community in Pennsylvania. Petitioner expressed genuine remorse for his misconduct and believes that because of his very public fall from grace and the insights he has learned, he is better able to contribute to the legal profession. He has worked hard to regain a measure of public acceptance, and by the accounts of the witnesses, he has achieved this goal.

Petitioner has maintained his competence in the law during his suspension. He completed the required continuing legal education courses, as well as many other courses beyond the requirements. He researched legal issues and wrote many legal briefs, including documents in five constitutional challenge cases before the Commonwealth and Supreme Courts of Pennsylvania.

The record evidences that petitioner has met with clear and convincing evidence his burden of proving that he is morally qualified, competent and learned in the law. Furthermore, petitioner has demonstrated that his read-

mission will not be detrimental to the bar or to the public. For these reasons the board recommends that the petition for reinstatement be granted.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that petitioner, [　], be reinstated to the practice of law.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement.

Board Members Elliott and Morris did not participate in the September 26, 2000 adjudication.

## ORDER

And now, March 19, 2001, upon consideration of the report and recommendations of the disciplinary board of the Supreme Court of Pennsylvania dated January 22, 2001, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.