**In re Anonymous No. 59 D.B. 95**

Disciplinary Board Docket no. 59 D.B. 95.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

MORRIS, *Member,* April 26, 2001—

## I. HISTORY OF PROCEEDINGS

By order of the Supreme Court of Pennsylvania dated May 6, 1997, petitioner was suspended for a year and a day on account of his mishandling of a *relatively* small amount of money collected on behalf of a client.

A petition for reinstatement was filed on December 27, 1999. Hearings were held before Hearing Committee [　] an July 6, 2000. After receiving briefs from both parties, the Hearing Committee filed its report on October 24, 2000, recommending that reinstatement be denied.

No further briefs have been filed. The matter was adjudicated by the Disciplinary Board on January 17, 2001.

## II. FINDINGS OF FACT

(1) The Office of Disciplinary Counsel, the principal office of which is located at Suite 3710, One Oxford Centre, Pittsburgh, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of an attorney admitted to practice in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Petitioner, [ ], was born in 1953, was admitted to practice law in the Commonwealth of Pennsylvania in 1984, and his current address is [ ]. (Petitioner's exhibit 1; N.T. pp. 10-11.)

(3) In 1992 petitioner was retained to do collection work on behalf of the [A] Association, which was a residential housing cooperative. In the course of collecting a certain account, petitioner failed to timely notify the client or promptly turn over collected funds. Specifically, on one occasion, a payment of $292 was not effectuated because petitioner's check was returned for insufficient funds. A second collection in a similar amount was simply retained by the petitioner. Petitioner then ignored repeated requests for the funds by the client until complaint was made to Office of Disciplinary Counsel at which point petitioner turned over $584.

(4) By order of the Supreme Court of Pennsylvania dated May 6, 1997, petitioner was suspended from the bar of the Commonwealth of Pennsylvania for a period of one year and one day. (Petitioner's exhibit 1.)

(5) Petitioner received an informal admonition on January 14, 1993, at file number [ ] (formerly number [ ]), for violations of Rules of Professional Conduct 1.3 (diligence), 1.4(a) (communication), and 1.16(d) (declining or terminating representation), and two informal admonitions on March 12, 1999, at files [ ] (formerly [ ]), for violations of Rules of Professional Conduct 1.3 (diligence), 1.4(a) (communication), 1.5(b) (fees), and 1.16(d) (declining or terminating representation). (Petitioner's exhibit 1.)

(6) Intertwined throughout petitioner's legal career and his period of suspension is the matters of *[B] v. [Re-*

*spondent],* child support action originally filed in South Carolina at some time in 1983 or 1984 and soon pursued as a Uniform Reciprocal Enforcement of Support Action in the [ ] Court of Common Pleas. (ODC 1; N.T. pp. 67-68.)

(7) From 1987 through 1995, there was a repeating and continuous pattern of petitions for contempt, directions to appear, failures to appear, bench warrants, and re-listings. (ODC 1-29; N.T. pp. 74-90.)

(8) The common pleas court's best success in obtaining petitioner's presence came when it could locate him in another courtroom. (ODC 35; N.T. pp. 83-84.)

(9) An order of court dated October 24, 1995, stated that petitioner was served with notice of, but did not appear for, a hearing, so the case was continued pending his appearance. The order directed the issuance of a 10-day letter followed by a high priority arrest warrant and, when the petitioner was arrested, a request for a straight cash bond of $26,088 was to be made. (ODC 26.)

(10) A bench warrant for direct criminal contempt dated November 13, 1995, directed that petitioner be arrested and brought before the court because he failed to appear for a scheduled hearing. Bail was to be set in the amount of $26,088 cash. (ODC 29; N.T. pp. 88-89.)

(11) Petitioner could not be located for service of the November 13, 1995 bench warrant because petitioner, as had been his practice throughout the proceedings, changed his address without notice to the court. (ODC 2, ODC 33, p. 13; N.T. pp. 86-87.)

(12) Petitioner changed his address several times after the inception of the *[B] v. [Respondent]* matter, but failed to keep the court informed of his changes of address as ordered by the court. (ODC 2, ODC 33, p. 13; N.T. pp. 86-87.)

(13) Despite petitioner's several changes of address which he failed to report to the court, he received notice of hearings by regular mail and certified mail. In many instances, he was personally served with notices, particularly on the rare occasions he appeared voluntarily for hearings, as well as those times when he was arrested and brought before the court. (ODC 10, ODC 18, ODC 22, ODC 24, ODC 26; N.T. pp. 86-87, 117-18.)

(14) On June 11,1998, petitioner was arrested in [   ] by Constables [C] and [D] pursuant to the outstanding warrant of November 13, 1995. (N.T. pp. 128-29, 130-34.)

(15) When the uniformed constables approached petitioner and asked his identity, he gave two different names, both of which were false identities. (N.T. pp. 132, 140.)

(16) Petitioner then ran from the constables, and Constable [C] gave chase on foot. (N.T. p. 132.)

(17) After running for two blocks, petitioner came to an automobile which was stopped at a traffic signal and attempted to gain access to the vehicle without the driver's permission. He was unsuccessful because the vehicle's doors were locked. (N.T. pp. 132-33.)

(18) Petitioner resumed his flight from Constable [C] for one block, but was apprehended. (N.T. p. 133.)[1]

---

1. At this point, petitioner was not untutored in the arrest process, having been previously arrested in 1993 in the matter of *[F] v. [Respondent],* also involving child support. (ODC 33, p. 10.)

(19) Petitioner was transported to [ ] for arraignment. (N.T. pp. 91, 129.)

(20) On June 17, 1998, the Honorable [E] held a hearing on the issues of petitioner's criminal and civil contempt in the matter of *[B] v. [Respondent]*. (ODC 33.)

(21) At the conclusion of the hearing on the criminal contempt citation, petitioner was sentenced to 30 days in jail by the Honorable [E] who opined:

"[Respondent], I find you to be in direct criminal contempt for failure to appear. I do not accept your explanation. I think you're a fine lawyer, I do think you are a fine lawyer. I do think that you fell on hard times, but I think that you escaped to [ ] and then escaped to [ ]. I think that you were never coming in here. I think that 20, 30, 50 years could have passed. Your child could have grown to old age, and you were never going to come in here. You were never going to pay a penny. You were going to intentionally skip this obligation. I don't accept at all that this was a matter of hard times. I think it was intentional, and I think you left the jurisdiction because you are a lawyer and you know the ropes. I sentence you to a month in jail. That's punishment, and if I ever see you again for missing a hearing I am going to put you in jail for six months, . . . . On the matter of civil contempt, I also don't accept what you're saying . . . . I also don't buy that you haven't been working at all. Your wife works, you work, you're well-dressed. You just didn't pay support . . . . Now I have the same comments on civil contempt . . . you're not going to pay these arrearages. You're going to die before you pay them off unless you hit the lottery. But at least you'll make some payment, to help your children who need help even when

they're 17 and 18 so that they can have some quality of life. So get a job and pay half of what you make against these arrearages." (ODC 33, pp. 27-37.)

(22) As a result of his various contempts, petitioner has been incarcerated for 82 days. (Petitioner's brief p. 10.)

(23) By order of court dated March 30, 1999, the *[B] v. [Respondent]* case was dismissed and all arrears dismissed, pursuant to a "joint motion motion [sic] by plaintiff and defendant to dismiss," presented by petitioner. (Petitioner's exhibit 1, petitioner's exhibit 2.)

## III. CONCLUSIONS OF LAW

(1) Petitioner has failed to demonstrate by clear and convincing evidence that he has the moral qualifications required for admission to practice law in the Commonwealth of Pennsylvania, as required by Rule 218(c)(3)(i), Pa.R.D.E.

(2) Petitioner failed to demonstrate by clear and convincing evidence that the resumption of the practice of law within the Commonwealth by petitioner will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive of the public interest, as required by Rule 218(c)(3)(i), Pa.R.D.E.

## IV. DISCUSSION

This matter is before the Disciplinary Board on a petition for reinstatement filed by petitioner. Petitioner was suspended for a year and a day pursuant to Supreme Court order of May 6, 1997.

Pursuant to Rule 218(a), Pa.R.D.E., an attorney who is suspended for a period exceeding one year may not resume practice until reinstated by order of the Supreme Court of Pennsylvania. In order for petitioner to gain reinstatement, he has the burden of proving by clear and convincing evidence that he possesses the moral qualifications, competency, and learning in the law required for admission to practice in this Commonwealth. In addition, petitioner has the burden of demonstrating that his resumption of the practice of law will not be detrimental to the integrity and standing of the bar or the administration of justice, nor subversive of the public interest. Rule 218(c)(3)(i), Pa.R.D.E.

A reinstatement proceeding is a searching inquiry into a lawyer's present professional and moral fitness to resume the practice of law. The object of concern is not solely the transgressions which gave rise to the lawyer's suspension, but rather the nature and extent of the rehabilitative efforts the lawyer has made since the time the sanction was imposed, and the degree of success achieved in the rehabilitative process. *Philadelphia News Inc. v. Disciplinary Board of the Supreme Court,* 468 Pa. 382, 363 A.2d 779 (1976).

Petitioner was suspended as a result of his mishandling of client funds in 1992 and 1993. The suspension was imposed on May 6, 1997; petitioner applied for reinstatement on December 12, 1999.

In support of his evidentiary burden, petitioner argues that he has suffered greatly from both his suspension and his travails in the [    ] Court of Common Pleas. He de-

clares that he has turned his life around in part through Bible study and notes that both of his support cases have now been dismissed by agreement. Petitioner called no character witnesses on his behalf.

It remains, however, that petitioner's conduct during the period of his suspension—namely, the warrant-dodging and the unseemly arrest—reflects poorly upon his moral fitness. Essentially, petitioner spent 15 years avoiding his court-ordered support obligations. These efforts included repeated and consistent failures to appear in court, establishing new addresses without informing the court, and finally, in 1998, a street chase in [   ] which culminated in petitioner's arrest and incarceration for criminal contempt.

Reinstatement has been consistently denied in cases of unlawful or shabby conduct during the suspension period. *In re Anonymous No. 22 D.B. 77,* 8 D.&C.4th 288 (1990), involved the petition for reinstatement of an attorney who had been suspended for a period of three years. The attorney, by his own admission, failed to file federal and state income tax returns from 1984 through 1988, the intervening period between the imposition of his suspension and his reinstatement hearing. The board stated "[t]his is not the type of conduct which one would expect from an individual who is looking forward to the resumption of a profession which demands the highest moral standards." *Id.* at 293. The board concluded that the attorney completely failed to recognize the nature of his wrongdoing. The Supreme Court concurred with the board's recommendation for a denial of the petition for reinstatement. *Id.* at 296.

In *In re Anonymous No. 53 D.B. 75,* 20 D.&C.3d 278 (1980), a petition for reinstatement was denied on the basis of the attorney's conduct that intervened between the imposition of his suspension from which he sought reinstatement, and the disposition of that petition. The conduct involved charges of defiant trespass and open lewdness. The Hearing Committee found, and the board agreed, that the attorney failed to offer a satisfactory explanation for the conduct in question which, in turn, led to the conclusion that the attorney failed to meet his burden of proof on the issues of his moral qualifications and whether his resumption of the practice of law would be detrimental to the integrity and standing of the bar or the administration of justice, nor subversive of the public interest. *Id.* at 289. Consequently, the board recommended, and the Supreme Court agreed, that the petition for reinstatement should be denied. *Id.* at 290.

In *In re Anonymous No. 1 D.B. 94,* 34 D.&C.4th 236 (1996), a petition for discipline alleged that the respondent-attorney had engaged in professional misconduct by fleeing Pennsylvania in order to avoid incarceration. *Id.* at 237. The board stated that there was no doubt that the attorney's flight had an adverse impact on the public trust, since as "an officer of the court [he had] a duty to uphold the law, not subvert it." Such conduct, the board wrote, "discredits the legal profession and makes a mockery of the legal system. An attorney who shows such disrespect for the law, forfeits his privilege to serve as an attorney and is not competent to represent members of the public or to appear before the courts." *Id.* at 245.

*Office of Disciplinary Counsel v. Casety,* 511 Pa. 177, 512 A.2d 607 (1986). The board recommended, and the Supreme Court concurred, that the appropriate discipline for the attorney's flight from prosecution was disbarment. *Id.* at 246-47.

In each of the cited cases, as in this case, the behavior is simply insistent with establishing the moral fitness to practice law.

The board also questions whether petitioner has soundly reflected upon his failings and derelictions. Rather, it seems that at every stage, he has preferred to blame someone else. At his initial disciplinary hearing, petitioner unconvincingly sought to characterize the charges against him as racially motivated. (Hearing Committee report p. 14.) In his reinstatement hearing, he griped extensively about the motivations and procedures of Office of Disciplinary Counsel (petitioner's brief pp. 1-5) and indulged in unsubstantiated attacks against live witnesses. Specifically, he accused the arresting constable of exaggerating his testimony because the constable was supposedly embarrassed at being outrun by petitioner. (N.T. pp. 134-36.) Additionally, he baselessly attacked the credibility of the [ ] Court employee who testified to the history of petitioner's two support proceedings. Without any substantiation, petitioner accused the employee of falsifying the file and removing documents. (N.T. pp. 104-105.)

The Hearing Committee noted, and we adopt the view, that petitioner's behavior at the hearing and his highly questionable testimony concerning his 1998 arrest reflect poorly upon his current fitness as an attorney.

Petitioner has not demonstrated that he has made the requisite changes that would warrant re-admission to the bar. On the contrary, his 1998 arrest and his conduct at the instant hearing demonstrate a lack of respect for the justice system.

## V. CONCLUSION

Petitioner has not met his burden to show by clear and convincing evidence that he has the moral qualifications required for admission to the practice of law in Pennsylvania, nor has petitioner proven by clear and convincing evidence that his resumption of the practice of law will be neither detrimental to the integrity and standing of the bar or the administration of justice, nor subversive to the public interest. Petitioner has a long and continual history of flouting court orders and failure to respect the legal system which has continued until the present day. Under such circumstances, it is recommended that his petition be denied.

Board Member Caroselli did not participate in the January 17, 2001 adjudication.

## ORDER

And now, June 28, 2001, upon consideration of the report and recommendation of the Disciplinary Board of the Supreme Court of Pennsylvania dated April 26, 2001, the petition for reinstatement is denied.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.