363 A.2d 779

PHILADELPHIA NEWSPAPERS, INC. and
Anthony Lame, Petitioners,

v.

The DISCIPLINARY BOARD OF the SU-
PREME COURT of Pennsylvania
and Albert B. Gerber.

Supreme Court of Pennsylvania.

Aug. 27, 1976.

Dilworth, Paxson, Kalish & Levy, Stephen J. Mathes, Philadelphia, for petitioners.

Mercer D. Tate, Robert L. Trescher, John Herron, Ricardo Calvin Jackson, Philadelphia, for respondents.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

PER CURIAM.

This is an action commenced by petitioners Philadelphia Newspapers, Inc. and Anthony Lame, one of its reporters, requesting this Court to issue a Writ of Prohibition to the Disciplinary Board of the Supreme Court of Pennsylvania prohibiting the Board from conducting a hearing on a petition that Albert B. Gerber be reinstated as a member of the bar.[1] Mr. Gerber voluntarily resigned from the bar in 1972 after having pleaded guilty

---

1. This Court has jurisdiction pursuant to Act of July 31, 1970, P. L. 673 No. 223 § 201, 17 P.S. § 211.201.

to various counts of federal securities fraud.[2] Early in 1976 he petitioned for reinstatement. Upon learning that petitioner Lame had sought admission to the reinstatement hearing when it should be held, Mr. Gerber requested the Board that the hearing be non-public. The Board agreed. This proceeding followed.

The issue raised in this action is an extremely narrow one. Petitioners do not allege that the Board's decision to bar the press from the hearing infringes on their First Amendment right to gather information.[3] Rather, the sole issue we are asked to address is whether under our present Rules of Disciplinary Enforcement [4] the Disciplinary Board has the authority, in its discretion, to conduct Mr. Gerber's hearing in camera. We hold that the Board's action was not in contravention of our rules nor an abuse of the Board's discretion. It follows that the limited attack on its decision must fail.

2. Mr. Gerber's letter of resignation was tendered on January 20, 1972 to the Chairman of the Committee of Censors of the Court of Common Pleas of Philadelphia County. On March 10, 1972 the Court of Common Pleas of Philadelphia County granted Mr. Gerber's petition for leave to resign and struck his name from the rolls as of that date. On April 28, 1972, our Court accepted Mr. Gerber's resignation from the bar of this Court with prejudice, and ordered his name stricken from the rolls until further order from this Court. The entire resignation proceeding pre-dated our Rules of Disciplinary Enforcement and was conducted pursuant to the then applicable local rules of disciplinary enforcement which had been promulgated by the Court of Common Pleas of Philadelphia County. Cf. Rules 17–15, 17–18 of our Rules of Disciplinary Enforcement.

3. Since no First Amendment violation is claimed in this case our recent decision in *McLaughlin v. Philadelphia Newspapers, Inc.,* 465 Pa. 104, 348 A.2d 376 (1975), is not apposite.

4. Rule 17 of the Supreme Court of Pennsylvania, adopted March 21, 1972, effective July 1, 1972, 446 Pa. xxiii (1972), later extended to November 1, 1972. During the course of this opinion we shall refer to various portions of Rule 17 without further formal citation. By order of Court entered June 28, 1976, effective generally 120 days thereafter, Rule 17 of the Supreme Court, which contained the rules relating to disciplinary enforcement was redesignated as the Pennsylvania Rules of Disciplinary Enforcement.

Our Rules of Disciplinary Enforcement are silent on the question of the confidentiality of reinstatement proceedings.[5] The rules do, however, grant broad discretion to the Disciplinary Board to formulate rules to govern the conduct of proceedings before it. Thus Rule 17–5(c)(9) provides that the Board shall have the power "to adopt rules of procedure not inconsistent with these Rules." As a consequence, the Board can be said to have acted inconsistently with our Rules of Disciplinary Enforcement, and hence improperly, only if public policy dictates that the rules be read as mandating that reinstatement hearings be open to the public. We do not believe that the rules should be so read.

██ A reinstatement proceeding is a searching inquiry into a lawyer's present professional and moral fitness to resume the practice of law. The object of concern is not solely the transgressions which gave rise to the lawyer's suspension or disbarment, but rather the nature and extent of the rehabilitative efforts he has made since the time the sanctions were imposed, and the de-

---

5. The Disciplinary Board argues that the confidentiality of reinstatement proceedings is provided for by Rule 17–23 of this Court, which provides in pertinent part:

"All proceedings involving allegations of misconduct by or disability of an attorney shall be kept confidential until and unless the Supreme Court enters its order for the imposition of public discipline or the respondent-attorney requests that the matter be public or the investigation is predicated upon a conviction of the respondent-attorney for a crime or, in matters involving alleged disability, the Court enters an order transferring the respondent-attorney to inactive status pursuant to Rule 17–20."

The Board contends that reinstatement proceedings involve "allegations of misconduct by . . . an attorney," and thus are covered by the express language of the rule. The context in which this language appears, however, strongly suggests that Rule 17–23 is directed exclusively towards the initial disciplinary proceedings. The confidentiality provisions of the rule are closely tied into and limited by the entry by this Court of an order for the imposition of public discipline. As such an order can only issue upon a review of a disciplinary proceeding, it is reasonable to assume that Rule 17–23 was not intended to apply in other instances.

gree of success achieved in the rehabilitative process.[6] Prior to the hearing a lawyer seeking reinstatement [hereinafter respondent] must complete a reinstatement questionnaire which calls for a detailed account of respondent's financial and personal dealings during the period of his suspension or disbarment. Respondent's activities during this period are the subject of an extensive investigation by the Board.

■ At the hearing respondent's rehabilitative effort is fully explored. As well as presenting a case in his own behalf, respondent is required to answer all allegations of improprieties raised by the counsel for the Board. The burden is on respondent and he must establish by clear and convincing evidence that he possesses

"the moral qualifications, competency and learning in law *required for admission to practice law in this Commonwealth* and that his resumption of the practice of law within the Commonwealth will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive of the public interest." Rule 17–18(c) (emphasis added).

A determination of an individual's moral fitness to engage in the practice of law requires an exposure of sensitive aspects of the individual's personal life and an air-

6. Because Mr. Gerber's letter of resignation was prompted by a conviction for a crime, petitioners argue that the instant proceeding is one predicated on that conviction and, for that reason, should be made public. Petitioner's argument is bottomed on the provision in Rule 17–23, *supra* n. 5, which excepts from its confidentiality protections investigations predicated on a conviction for a crime. Petitioner's argument, however, misperceives the nature of the reinstatement proceedings. While the egregiousness of a disbarred lawyer's offense certainly has a bearing on whether reinstatement is warranted, nonetheless the main thrust of the proceeding is whether the disciplined attorney is now morally fit and technically competent to engage in the practice of law. See ABA Committee on Evaluation of Disciplinary Enforcement, Problems and Recommendations in Disciplinary Enforcement 150–155 (1970). The proceedings are not predicated upon the conviction of a crime as that term is used in Rule 17–23.

ing of all charges or rumors of improprieties which have been raised against him before or since the original imposition of discipline. Public disclosure of these personal affairs or of these accusations could have a seriously prejudicial impact on the personal and professional life of the individual, with no corresponding benefit to others.[7] In recognition of this fact this Court has ordered that when a person makes his initial application for admission to the bar, the hearings probing the moral fitness of the applicant "shall not be open to the public." Rule 14. We see no reason why a lawyer who undergoes similar scrutiny in his reinstatement hearing should, as a matter of policy, be deprived of a similar protection. In the instant case the Board has determined that such protection should be extended to Mr. Gerber. In reaching this decision the Board acted consistently with the Rules of Disciplinary Enforcement. Accordingly, we must deny petitioner's application for a Writ of Prohibition.

It is so ordered.

ROBERTS, J., filed a dissenting opinion.

EAGEN, J., dissents.

7. In a somewhat different context, the Court has recently pointed out the dangers which inhere in the publication of potentially unfounded allegations against a lawyer.

" 'Disclosure of the existence of that accusation may itself result in irreparable harm to the attorney. His practice may be diminished, if not substantially destroyed, by the resulting lack of confidence of old and new clients, judges before whom he has to appear and fellow attorneys with whom he must negotiate.

\* \* \* \* \* \* \* \* \*

" '[T]he attorney never can recoup the financial loss caused by public disclosure of charges against him, even if he is subsequently exonerated. In fact, since later exoneration is never as newsworthy as the prior accusation, it is likely that the damage visited on him will continue even after the charges have been found not to have been sustained.' " The ABA Committee on Evaluation of Disciplinary Enforcement, Problems and Recommendations in Disciplinary Enforcement 139 (1970), as quoted with approval in *McLaughlin v. Philadelphia Newspapers, Inc.*, 465 Pa. 104, 348 A.2d 376 (1975).

ROBERTS, Justice (dissenting).

The majority grants a disbarred attorney's request to have his reinstatement hearing conducted in secret. I dissent.

In 1972, respondent Gerber pled guilty to twelve counts of federal securities fraud involving 1.5 million dollars. He was sentenced to five year probation and voluntarily resigned from the Pennsylvania bar. Although the criminal activity which led to his disbarment is part of the public record, the majority now permits his reinstatement hearing to be held in secret.

A reinstatement hearing is held to determine whether a disbarred attorney is fit to practice law in this Commonwealth. If a disbarred attorney is reinstated, he becomes an officer of the court. Therefore, reinstatement hearings are an integral part of this Court's obligation to supervise the judicial system. See *In re Shigon*, 462 Pa. 1, 22, 329 A.2d 235, 246 (1974); *McLaughlin v. Philadelphia Newspapers, Inc.*, 465 Pa. 104, 119, 348 A.2d 376, 383 (1975) (dissenting opinion of Roberts, J.). As such, the hearings are public business and the public has a right to know upon what facts reinstatement is granted or denied. We have no special privilege to authorize this public business to be conducted secretly. As the Supreme Court of the United States stated in *Craig v. Harney*, 331 U.S. 367, 374, 67 S.Ct. 1249, 1254, 91 L.Ed. 1546 (1947):

"There is no special prerequisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit or censor events which transpire in proceedings before it."

See *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 96 S. Ct. 2791, 49 L.Ed.2d 683 (1976); *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975).

Neither our rules nor common sense require or condone a secret reinstatement hearing which follows a criminal trial and a disciplinary proceeding, both of which had been made public. Honesty in government is promoted when "public business functions under the hard light of full public scrutiny." *Tennessean Newspapers, Inc. v. Federal Housing Administration,* 464 F.2d 657, 660 (6th Cir. 1972).

The majority concludes that conducting an open reinstatement hearing would be of no benefit to the public. To the contrary, it is essential to the maintenance of public trust in our legal system that these proceedings be open. If respondent is in fact rehabilitated and entitled to reinstatement, the basis for that determination, which could hardly be detrimental to respondent, should be opened to those interested. The public must know the basis for determining when a disbarred attorney is entitled to reinstatement before the integrity of such hearings can be ensured.

I must also disagree with the majority's assertion that this Court should recognize whatever interest respondent may have in keeping these proceedings secret. In the circumstances of this case, I can find no justification for the majority's solicitous protection of respondent from possible public embarrassment.\* Compare *Cox Broadcasting Corp v. Cohn,* supra.

---

\* The majority incorrectly relies on *McLaughlin v. Philadelphia Newspapers, Inc.,* 465 Pa. 104, 348 A.2d 376 (1975), and ABA Committee on Evaluation of Disciplinary Enforcement, Problems and Recommendations in Disciplinary Enforcement 139 (1970) ("Clark Report"). (See majority opinion, supra at 781 n. 7.) Both of these discuss the privacy interests of practicing attorneys facing disciplinary charges. Here, respondent is not an attorney in good standing but rather one who has been disbarred and is seeking reinstatement. *McLaughlin* and the Clark Report therefore do not support the majority's position.

Moreover, I must reiterate my disagreement with the result reached in *McLaughlin.* There, the majority voluntarily denied itself access to a disciplinary record, and, by so doing, shrouded that court proceeding in a veil of secrecy. See *McLaughlin v. Philadelphia Newspapers, Inc.,* supra at 119, 120 n. 1, 348 A.2d at

No public or private interest is served by the majority's sanction of unnecessary secrecy, and its only product can be suspicion and mistrust of our willingness and ability to supervise the legal profession. The majority fails to recognize the lesson taught by experience: that openness in public affairs is the foundation of a free society. I dissent.

383, 384 n. 1 (*dissenting opinion of Roberts, J.*). As a result, the majority did not examine that record and denied the public access to important public business. Nothing could be more unwise and contrary to the public interest than the majority's continued approval of secrecy in court proceedings involving public business.