**In re Anonymous No. 49 D.B. 80**

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

RAVEN RUDNITSKY, *Member,* December 28, 1994 —Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

On October 19, 1982, the Supreme Court of Pennsylvania suspended petitioner from the practice of law for a period of three years.

On November 20, 1992, petitioner filed a petition for reinstatement.

The matter was referred to Hearing Committee [    ] on November 25, 1992. The committee consisted of [    ], Esquire, Chairperson, [    ], Esquire, member and [    ], Esquire, member.

A hearing was held on March 3, 1993.

On March 21, 1993, petitioner filed a brief to the Hearing Committee. Disciplinary Counsel advised the Hearing Committee on March 26, 1993, that no brief in opposition would be filed.

The Hearing Committee filed its report on May 9, 1994 recommending that reinstatement be granted.

On May 12, 1994, petitioner advised that no brief on exceptions to the Hearing Committee report would be filed and Disciplinary Counsel advised likewise on May 16, 1994.

The matter was adjudicated at the June 22, 1994 meeting of the Disciplinary Board.

## II. FINDINGS OF FACT

(1) Petitioner was born in 1929 and admitted to practice law in the Commonwealth of Pennsylvania in 1972.

(2) Petitioner presently resides at [    ]. (N.T. 23.)

(3) Petitioner, at the time of the hearing, was single but had been married for approximately 30 years until his marriage concluded with divorce. (N.T. 23, 24.)

(4) Petitioner had three children from the marriage who are all presently adults. One daughter is a member of the Bar of the Supreme Court of Pennsylvania; one daughter is involved in show business; and petitioner's son is involved in real estate. (N.T. 24.)

(5) Petitioner has an extensive legal and educational background. He received his B.A. at the University of [    ] in 1953. He received his Juris Doctorate in 1956

from the University of [    ] Law School. He then received his Masters of Law degree in international and comparative law at [    ] Law School in 1963 or 1964. (N.T. 25, 26.)

(6) Besides his extensive educational background, petitioner is fluent in French and speaks some Spanish and Portuguese. (N.T. 26.)

(7) Petitioner practiced law for a brief period of time in [    ], and then subsequently in [    ]. He was, at one point, associated with the firm of [A] in the 1950s. (N.T. 26, 27.)

(8) Petitioner had been admitted to practice law in the State of [    ] and, subsequently, in the State of [    ] during the 1950s. (N.T. 27.)

(9) Petitioner's primary employment was as a professor of law. (N.T. 28.)

(10) Petitioner taught at the [    ] University of Law School in 1964 and 1965. (N.T. 28.)

(11) In 1966, petitioner began teaching at [B] University School of Law and has remained at [B] as a professor through the present time. (N.T. 29.) At present, petitioner is a fully tenured professor of law at [B] Law School and received his tenure in or about 1978. (N.T. 29.)

(12) Petitioner, as a law professor, has taught law in many areas including contracts, commercial law, equity, remedies, agency and other areas. (N.T. 29.)

(13) Petitioner stated that he now has accepted responsibility for his misconduct although he initially had not when the misconduct was occurring. He indicated that during the time period of 1977, 1978, and

1979 when the misconduct occurred, he had a number of personal problems including his marriage breaking up and financial problems. (N.T. 30, 31.)

(14) Petitioner had been suspended for three years due to misconduct as set forth in the Disciplinary Board report for assisting in the placement of the signature of a decedent on a release in settlement of a personal injury case, misrepresenting that the proceeds of the personal injury case would not be included in the estate but would be part of a trust, and for backdating an amended trust document.

(15) [B] University and petitioner entered into an agreement whereby petitioner agreed to take a voluntary leave of absence for three years with 32 months unpaid leave in lieu of formal discipline stemming from the same set of facts which resulted in petitioner's suspension from practice in Pennsylvania. (N.T. 35, 56.)

(16) Petitioner did not practice law at any point during the period of his suspension from the bar. (N.T. 34, 38.)

(17) Petitioner did work as a paralegal for a period of a few weeks under attorney supervision. (N.T. 39.) This did not involve client contact in any form. (Id. 9.) During his leave of absence from [B], petitioner worked at a variety of jobs including driving in a messenger service, working as a chauffeur, as a cab driver and at various sales jobs. (N.T. 36, 38.)

(18) Petitioner admits that his actions in the handling of the estate which resulted in his suspension were clearly wrong. (N.T. 52, 65.)

(19) Petitioner accepts responsibility for his actions. (N.T. 30.)

(20) Petitioner testified that after his suspension in Pennsylvania, he was subsequently suspended in both the State of [    ] and the State of [    ] for reciprocal discipline based on the misconduct in Pennsylvania. (N.T. 40.)

(21) Petitioner demonstrated the necessary learning in the law through several courses including the Pennsylvania Legal Practice course offered at [    ] University. (N.T. 43-44.) Petitioner also does extensive reading for his work as a law professor. (N.T. 41.)

(22) Petitioner was never disciplined as an attorney prior to his suspension in 1982. (N.T. 39.)

(23) Petitioner is familiar with the Rules of Professional Conduct (N.T. 49), and has learned from them that his prior methods in practicing law were wrong. (N.T. 67.)

(24) Petitioner presented the character testimony of Professor [C] and Professor [D]. Both professors testified that petitioner's reputation for truthfulness, honesty as a law-abiding citizen is good in the community which knows him. (N.T. 10, 18.)

(25) Both [C] and [D] testified that petitioner accepts responsibility for his actions and has achieved insight into them. (N.T. 11, 20, 21.)

(26) Petitioner wishes reinstatement to rehabilitate his name for his children (N.T. 52-53), and to enhance his ability to teach law at [B]. (N.T. 43.)

### III. CONCLUSIONS OF LAW

The board finds that petitioner has demonstrated by clear and convincing evidence that he has the moral qualifications, competency and learning in law required for

admission to practice law in this Commonwealth and that the resumption of the practice of law within the Commonwealth by petitioner will neither be detrimental to the integrity and standing of the bar, or the administration of justice nor subversive of the public interest pursuant to Pa.R.D.E. 218(c)(3)(i).

## IV. DISCUSSION

This case involves the petition for reinstatement by an attorney suspended for three years because of mishandling of an estate through dishonesty. The attorney is a professor of law with impressive educational credentials. In addition to teaching he, prior to the suspension, had a small solo practice in which he served clients in a number of areas. (N.T. 51.)

In a reinstatement proceeding following suspension from the practice of law, the burden is on the petitioning attorney to prove by clear and convincing evidence that he or she has the moral qualifications, competency and learning in law required for admission to practice law in this Commonwealth and that the resumption of the practice of law within the Commonwealth by him or her will neither be detrimental to the integrity and standing of the bar or administration of justice, nor subversive of the public interest. Pa.R.D.E. 218(c)(3)(i). This involves a "searching inquiry" into the attorney's rehabilitation. *Philadelphia Newspapers v. Disciplinary Board of the Supreme Court,* 468 Pa. 382, 385, 363 A.2d 779, 780-781 (1976).

Petitioner established his competency in the law through his own testimony and exhibits. He has taken several courses including the Pennsylvania Legal Practice course from the Pennsylvania Bar Institute. (N.T. 43-44.) Petitioner also testified that in order to prepare for his teaching responsibilities he does continuous reading. (N.T. 41.) In addition he testified to a number of legal articles which he authored during his suspension. (N.T. 44.)

Petitioner convincingly demonstrated his remorse and regret over the conduct which caused the sanction. (N.T. 52, 65.) He also clearly accepted responsibility for his conduct. (N.T. 30.)

Petitioner did not engage in the unauthorized practice of law during his suspension. (N.T. 34, 38.) In addition, he lost part of his regular income through a 32 month unpaid leave from the law school where he teaches. The school and he negotiated this leave in lieu of additional discipline for the same conduct which resulted in his suspension from the practice of law. (N.T. 35, 56.) During this period of irregular employment, he worked at a variety of non-legal jobs including owning and driving a taxi, in retail sales in various sorts of merchandise. (N.T. 36, 38.) Petitioner also served for a short period of only a few weeks as a paralegal under attorney supervision. (N.T. 39.)

Petitioner's testimony was supported by that of two fellow professors of law, [C] and [D]. Both testified that petitioner has a good reputation for truth and for being law-abiding in the community which is familiar with him. (N.T. 10, 18.) Both [C] and [D] also testified that petitioner

fully accepts responsibility for his conduct in regard to the matter which resulted in his suspension, a change in his former attitude. (N.T. 11, 20, 21.) This type of evidence is persuasive toward showing rehabilitation. *In re Anonymous No. 36 D.B. 78,* 28 D.&C.3d 659, 663 (1984). The fact that petitioner did not engage in any further misconduct during his period of suspension coupled with the lack of any prior discipline before his suspension (N.T. 39), also argues in favor of his reinstatement. The board also notes that the Office of Disciplinary Counsel did not oppose the petition for reinstatement by way of formal brief to the Hearing Committee or exceptions to the Hearing Committee report.

Petitioner stated that he wished to be reinstated to the practice of law in order to rehabilitate his name for the sake of his children. (N.T. 52-53.) Petitioner equally stressed that reinstatement would enhance his ability to teach law. (N.T. 43.)

Petitioner presented credible, unrebutted testimony in support of his petition which satisfied the burden imposed by the Rules of Disciplinary Enforcement. Therefore, the board accepts the recommendation of the Hearing Committee and recommends reinstatement to the practice of law for this petitioner.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that petitioner, [ ], be reinstated to the practice of law.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement.

Board Members Kerns, Lieber and McGivern did not participate in the adjudication.

### ORDER

And now, February 7, 1995, upon consideration of the report and recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania dated December 28, 1994, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.

Mr. Justice Montemuro is sitting by designation.