## In the Matter of Weitzman

Disciplinary Board Docket no. 24 D.B. 2000.

SAIDIS, *Member,* September 17, 2004—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplin-

ary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

Petitioner, Dean Ian Weitzman, filed a petition for reinstatement to the bar of Pennsylvania on March 20, 2003. Petitioner was suspended for three years retroactive to March 13, 2000, by order of the Supreme Court of Pennsylvania dated February 8, 2002.

A reinstatement hearing was held on August 11, 2003, before Hearing Committee 1.10 comprised of Chair Luther E. Weaver III, Esquire, and Members Nancy B.G. Lassen, Esquire, and Robert A. Newman, Esquire. Petitioner was represented by John Rogers Carroll, Esquire.

Following the submission of briefs by the parties, the Hearing Committee filed a report on May 10, 2004, and recommended that the petition for reinstatement be granted.

Office of Disciplinary Counsel filed a brief on exceptions on May 28, 2004. Petitioner filed a brief opposing exceptions on June 25, 2004.

This matter was adjudicated by the Disciplinary Board at the meeting of July 17, 2004.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner is Dean Ian Weitzman. He was born in 1962 and was admitted to practice law in the Common-

wealth in 1987. His current address is 1215 Gilbert Road, Meadowbrook, PA 19046.

(2) Petitioner was suspended from the practice of law for three years, retroactive to March 13, 2000, by order of the Supreme Court of Pennsylvania dated February 8, 2002.

(3) Petitioner was convicted in 1999 of three counts of attempt to evade or defeat tax, in violation of 26 U.S.C. §7201.

(4) Petitioner carried out his tax evasion scheme by receiving clients' settlement checks and cashing them at a check cashing agency. He then deposited the proceeds into his private escrow account, wrote those clients checks from that escrow account, and kept the remaining cash for himself. He did not report or account for this income to his law firm partners.

(5) Petitioner was fined $30,000 and placed on probation for three years, with home detention and electronic monitoring for the first six months.

(6) Petitioner completed his criminal sentence and paid the $30,000 fine.

(7) Petitioner paid his entire tax debt to the City of Philadelphia of $40,000 as well as all back taxes owed to the Commonwealth.

(8) Petitioner's original federal tax liability was approximately $198,000; however, by 2003, it had increased to about $400,000 due to interest and penalties.

(9) Petitioner borrowed $100,000 to make a down payment of his federal tax debt and has repaid $50,000 of this. He also paid another $35,000 to the IRS for total

payments to the IRS of $135,000 prior to offers of compromise.

(10) On his accountant's advice, petitioner has not made any further payments pending consideration of his second offer in compromise. His first offer in compromise was refused in February 2001, and the second one was filed July 28, 2003. This later offer anticipates a lump sum payment of $200,000 on a total debt of approximately $400,000.

(11) Petitioner submitted documentation in October 2003, consisting of a letter from Ivy Mortgage to petitioner, attaching a "good faith estimate" for a loan in the amount of $195,469.89, for the payment of the IRS debt, if the offer in compromise is accepted. He also submitted a letter from Buonomo & Associates, his accounting firm, confirming their efforts to have the offer in compromise approved.

(12) Petitioner has also paid down other indebtedness, including mortgage and credit card balances and is current with all his obligations but for the IRS and money he owes to Saul Langsam, Esquire.

(13) Mr. Langsam and petitioner have agreed that petitioner must repay his federal obligations before paying his debt to the law firm of Silvers & Langsam.

(14) After his suspension, petitioner initially worked for the Silvers & Langsam law firm as a law clerk. His current occupation at that firm consists of administering and maintaining the computer system and all matters related to information flow, such as case management and bookkeeping.

(15) Petitioner fulfilled his Continuing Legal Education requirements for reinstatement. He reads the *Legal Intelligencer, PA Law Quarterly* and other periodicals on a frequent basis, as well as advance opinions.

(16) Petitioner is a recovering drug addict. This addiction was a causal factor in his misconduct, as petitioner proved in his underlying discipline case.

(17) Subsequent to the time that petitioner's crime was discovered, he sought help for his drug addiction by receiving inpatient treatment at Father Martin's Ashley, a rehabilitation center in Maryland. Petitioner then became associated with a lawyers' therapy group facilitated by Dr. Richard Limoges, as well as a lawyers' recovery group which met in Philadelphia every week.

(18) Petitioner attends on a regular basis meetings of Alcoholics Anonymous and Narcotics Anonymous, going to meetings four or five times per week for the last six years.

(19) Petitioner has been sober for more than six years without a relapse.

(20) Dr. Limoges testified at the reinstatement hearing. He is board certified in addiction medicine as well as psychiatry. Dr. Limoges began treating petitioner in 1997 and has seen him regularly for the past six years.

(21) Dr. Limoges' current diagnosis is "chemical dependency in long-time stable remission." Dr. Limoges opined that petitioner is able to be a fully functioning attorney at this time.

(22) Judge Robert Rebstock of the Court of Common Pleas of Philadelphia testified on petitioner's behalf. He is petitioner's Alcoholics Anonymous spon-

sor. Judge Rebstock has known petitioner for approximately 12 years. Judge Rebstock meets with petitioner twice a week and has confidence in his mature dealings with his addiction and his continuing recovery. He observed that petitioner has dealt with his addiction forthrightly.

(23) Thomas J. Duffy, Esquire, knows petitioner through the lawyers' recovery meeting for the last five years. He has observed that petitioner is a faithful participant in his recovery programs and would not bring disrepute to the bar if reinstated.

(24) Vincent Pileggi knows petitioner through Narcotics Anonymous and sees petitioner at least three times per week at meetings of that group. He believes petitioner is doing well in his recovery and is an active participant in his recovery programs.

(25) David Rapaport, Esquire, rents office space from the Langsam law firm and has employed petitioner as a part-time paralegal to do research and draft documents. Mr. Rapaport is impressed with petitioner's legal abilities and has noticed a great improvement in petitioner's attitude towards work since he became sober. He testified that if petitioner was reinstated he would recommend clients to him.

(26) Saul Langsam, Esquire, is petitioner's former law partner and current employer. He testified he would welcome petitioner back to the firm as a lawyer if he is reinstated and feels that petitioner would be an attribute to the bar. Mr. Langsam is confident that petitioner will stay committed to his recovery program.

(27) Several other witnesses testified who know petitioner from recovery programs. These witnesses all had positive remarks about petitioner's commitment to his sobriety and his participation in recovery programs.

(28) Petitioner's wife, Lisa Weitzman, testified to the positive change she has witnessed in her husband. He is now honest and reliable and involved with family life as never before.

(29) Petitioner testified on his own behalf regarding his recovery from substance abuse. Petitioner recognizes that he is an addict and has worked hard to maintain his sobriety. He believes he is a different person from the man he was in 1997. His relationship with his family has been strengthened since his sobriety and he is now a major participant in his children's lives.

## III. CONCLUSIONS OF LAW

(1) Petitioner has the moral qualifications, competency and learning in the law required to practice law in Pennsylvania.

(2) Petitioner's resumption of the practice of law will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive of the public interest.

## IV. DISCUSSION

This matter is before the Disciplinary Board on a petition for reinstatement filed by Dean Ian Weitzman. By order of the Supreme Court of Pennsylvania dated February 8, 2002, petitioner was suspended from the practice of law for three years retroactive to March 13, 2000.

Pursuant to Rule 218(a), Pa.R.D.E., an attorney who is suspended for a period exceeding one year may not resume the practice of law until reinstated by the Supreme Court of Pennsylvania. In order for petitioner to gain reinstatement, he has the burden of proving by clear and convincing evidence that he possesses the moral qualifications, competency and learning in the law required for admission to practice law in this Commonwealth. In addition, petitioner has the burden of demonstrating that his resumption of the practice of law will not be detrimental to the integrity and standing of the bar or administration of justice, nor subversive of the public interest. Rule 218(c)(3)(i), Pa.R.D.E.

A reinstatement proceeding is a searching inquiry into a lawyer's present professional and moral fitness to resume the practice of law. The object of concern is not solely the transgressions which gave rise to the lawyer's suspension, but rather the nature and extent of the rehabilitation efforts the lawyer has made since the time the sanction was imposed, and the degree of success achieved in the rehabilitative process. *Philadelphia Newspapers Inc. v. Disciplinary Board of the Supreme Court,* 468 Pa. 382, 363 A.2d 779 (1976).

Petitioner was convicted of three counts of attempting to evade or defeat tax and served a sentence of three years of probation plus a $30,000 fine. All of petitioner's criminal penalties have been fulfilled. At the proceeding before the Disciplinary Board, which resulted in petitioner's three-year suspension, petitioner proved by clear and convincing evidence that his addiction to drugs substantially caused his criminal misconduct. Petitioner's request for reinstatement places squarely before the board

petitioner's efforts at rehabilitation in connection to his psychiatric disorder. The record is clear that petitioner has made substantial and successful efforts at achieving sobriety. Shortly after evidence of petitioner's criminal acts was discovered, he checked into a rehabilitation center in Maryland. He sought psychiatric treatment with Dr. Richard Limoges, a specialist in addiction issues. He began participation in several recovery programs, including Narcotics Anonymous and Alcoholics Anonymous, which participation continues at the present time. By all accounts, petitioner has been committed to his recovery and has maintained his recovery without relapse to substance abuse. Dr. Limoges, Judge Rebstock, and others involved in petitioner's recovery testified at the reinstatement hearing as to the positive changes in petitioner, his honest and forthright confrontation of his addiction and his continuing efforts to maintain sobriety.

During petitioner's suspension he worked as a law clerk and a computer administrator for his former law firm. Petitioner did not practice law while on suspended status. Petitioner kept apprised of the current law through his work and his reading of various periodicals and advance sheets, as well as attendance at his required Continuing Legal Education seminars.

Petitioner has made good faith efforts to repay his debts and obligations. He made payments of approximately $135,000 to the IRS on an original tax liability of $198,000. He paid in full his tax debt to the City of Philadelphia. He has submitted good faith offers in compromise to the IRS, including an offer on July 28, 2003, of an additional $200,000 lump sum payment. Petitioner's most recent offer in compromise was submitted in July

of 2003. There is no evidence before the board that this offer was acted on by the government; however, the existence of the offer submitted to the IRS stands as proof of petitioner's continuing efforts to repay his tax burden.

Office of Disciplinary Counsel objects to the Hearing Committee's finding that petitioner made good faith efforts to pay the IRS and opposes petitioner's reinstatement. The board is not persuaded by Office of Disciplinary Counsel's objections. Petitioner's payment of $135,000, plus his offer of another $200,000 in compromise, constitutes a reasonable good faith effort to satisfy his obligation, considering that petitioner made payments of other debts during that time period. Petitioner has made clear his intention to repay his obligation. Office of Disciplinary Counsel compares the instant matter to that of *In re Anonymous No. 74 D.B. 89,* (Pa. August 8, 2002). The attorney therein owed a $2 million tax liability to the IRS. The record showed that he made periodic payments for 12 to 18 months according to an installment agreement with the IRS. He then defaulted on that agreement and made an offer in compromise of $30,000, which was rejected by the IRS. The attorney then made an additional 10 payments totaling $1,900 before totally discontinuing his efforts to satisfy the obligation. The board recommended that reinstatement be denied and the court approved this recommendation. The instant matter is not as egregious as the cited case, and more importantly, petitioner has not discontinued his efforts to repay his debt.

Petitioner expressed remorse for his misconduct and has presented conclusive evidence that he has rehabili-

tated himself and is fit to practice law. Petitioner has met with clear and convincing evidence his burden of proving that he is morally qualified, competent and learned in the law. Furthermore, the board finds that petitioner's re-admission will not be detrimental to the bar or the public. For these reasons, the board recommends that petitioner be reinstated to the practice of law.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that petitioner, Dean Ian Weitzman, be reinstated to the practice of law.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement.

Vice-Chair Rudnitsky dissented and would deny reinstatement.

## ORDER

And now, November 17, 2004, upon consideration of the report and recommendations of the Disciplinary Board dated September 17, 2004, the petition for reinstatement is granted. We further direct Office of Disciplinary Counsel to consider any future non-payment of tax liability as a ground for discipline.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.