## In re Walters

Disciplinary Board Docket no. 76 D.B. 1998.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

RUDNITSKY, *Vice Chair,* November 10, 2004—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

Petitioner, Richard J. Walters, filed a petition for reinstatement to the bar of Pennsylvania on December 29, 2003. Petitioner was suspended for three years by order of the Supreme Court of Pennsylvania dated December 14, 2000.

A reinstatement hearing was held on May 24, 2004, before Hearing Committee 4.07 comprised of Chair Marie Milie Jones, Esquire, and Members Larry D. Meredith, Esquire, and Jerry A. Johnson, Esquire. Respondent was represented by Dennis M. Blackwell, Esquire. Respondent testified and presented the testimony of four witnesses.

The Hearing Committee filed a report on July 15, 2004 and recommended that petitioner's petition for reinstatement be granted.

No briefs were filed by the parties.

This matter was adjudicated by the Disciplinary Board at the meeting of September 27, 2004.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner is Richard J. Walters. He was born in 1961 and was admitted to practice law in Pennsylvania in 1990. His current address is 5460 White Oak Ave., Unit G111, Encino, CA 91316.

(2) Petitioner was suspended from the practice of law for three years by order of the Supreme Court of Pennsylvania dated December 14, 2000.

(3) In January 1998, in a non-jury trial in Allegheny County, petitioner was found guilty but mentally ill of the offenses of harassment by communication, terroristic threats, and summary harassment arising out of incidents occurring in connection with his contacts with an adult woman and a Greek Orthodox priest. The incidents occurred in 1997.

(4) On March 25, 1998, petitioner entered a plea of guilty but mentally ill to indecent exposure and disorderly conduct after he disrobed and ran though a nuns' dormitory at a Greek Orthodox monastery, shouting in an incoherent manner. This event happened in April 1997.

(5) After conviction, petitioner was sent to Mayview State Hospital for evaluation in consideration of sentencing. His discharge diagnosis was bipolar disorder and marijuana abuse disorder.

(6) Petitioner was sentenced to one year of restrictive intermediate punishment and seven years of probation. Special conditions included attendance at treatment session, submission to urinalysis, attendance at outpatient programs, entry into Lawyers Concerned for Lawyers and abstention from illegal drugs and alcohol.

(7) Petitioner began treatment in April 1997 with Dr. Marc E. Garfinkel, a psychiatrist.

(8) Dr. Garfinkel diagnosed petitioner as suffering from an acute mixed manic episode with psychotic features that followed years of hypomania, starting in 1993.

(9) Dr. Garfinkel initially prescribed Depakote three times daily, which worked to control petitioner's symptoms.

(10) Petitioner has been under the continuous care of Dr. Garfinkel since April 1997.

(11) Dr. Garfinkel testified at the reinstatement hearing.

(12) Petitioner's current diagnosis is Bipolar I Disorder, in full remission.

(13) Petitioner continues to take Depakote three times daily. The blood serum Depakote levels have been consistent during the past years and show that petitioner has taken the medication as prescribed.

(14) Petitioner sees Dr. Garfinkel every three to six months, which is the sufficient amount of times per year for the doctor to monitor respondent's progress.

(15) Although petitioner currently lives in California, he continues to use Dr. Garfinkel as his psychiatrist since petitioner visits Pittsburgh regularly due to family and business connections.

(16) Dr. Garfinkel opined that such a long-distance situation was not unusual, given petitioner's stability.

(17) Dr. Garfinkel made clear to petitioner that, if he experienced flare-ups while in California, he would have to seek treatment there.

(18) Petitioner has been entirely compliant with treatment.

(19) Petitioner's risk of relapse is very low as long as he takes his medication and abstains from substance abuse.

(20) Dr. Garfinkel did not think that the normal stress of practicing law would result in petitioner having another manic episode.

(21) Dr. Garfinkel opined that there is no psychiatric or medical reason that would prevent petitioner from practicing law.

(22) Three character witnesses testified on behalf of petitioner. All three witnesses gave credible testimony.

(23) Mark Flaherty is a Pennsylvania lawyer who was in recovery with petitioner. He has known petitioner since

1998. He described petitioner as dedicated to the process of recovery. Mr. Flaherty believes petitioner's reinstatement to the practice of law will not be detrimental to the public interest.

(24) Travis Klein is petitioner's recovery sponsor. He has known petitioner for more than five years and has spent a lot of time with petitioner. He believes that petitioner is dedicated to his recovery and would be an asset to the legal community if reinstated.

(25) Father Nicholas Boldireff is a Russian Orthodox priest at St. Innocent Orthodox Church in Tarzana, California, where petitioner is a congregant. He has known petitioner for more than two years and is aware of the facts of petitioner's conviction. He believes that the public interest would not be jeopardized by petitioner's return to the practice of law.

(26) Petitioner completed all of the requirements of his criminal sentence. He was released early from probation in 2000 by Judge Manning of the Allegheny County Court of Common Pleas.

(27) During his suspension, petitioner initially took a temporary position with Robert Deer, Esquire, an attorney in Pittsburgh, then took a job in construction.

(28) In late 2001, petitioner moved to California to pursue an acting and screenwriting career. He has found work as a background extra in various productions, and is involved in a theater group called the Will Geer Theatricum Botanicum, which performs for school children, among others.

(29) Petitioner has not pursued any legal employment in California.

(30) Petitioner fulfilled his Continuing Legal Education requirements for reinstatement to practice law in Pennsylvania.

(31) If reinstated, petitioner intends to remain in California and sit for that jurisdiction's bar examination.

(32) Petitioner is sober and attends Alcoholics Anonymous meetings at least once per week.

(33) Petitioner expressed sincere remorse for his past actions. He does recognize that his mental disorder is a lifelong one and must be continuously maintained by medication.

## III. CONCLUSIONS OF LAW

(1) Petitioner has the moral qualifications, competency and learning in the law required to practice law in Pennsylvania.

(2) Petitioner's resumption of the practice of law will be neither detrimental to the integrity and standing of the bar or the administration of justice, nor subversive of the public interest.

## IV. DISCUSSION

This matter is before the Disciplinary Board on a petition for reinstatement filed by Richard J. Walters. By order of the Supreme Court of Pennsylvania dated December 14, 2000, petitioner was suspended from the practice of law for three years.

Pursuant to Rule 218(a), Pa.R.D.E., an attorney who is suspended for a period exceeding one year may not resume the practice of law until reinstated by the Supreme Court of Pennsylvania. In order for petitioner to

gain reinstatement, he has the burden of proving by clear and convincing evidence that he possesses the moral qualifications, competency and learning in the law required for admission to practice law in this Commonwealth. In addition, petitioner has the burden of demonstrating that his resumption of the practice of law will not be detrimental to the integrity and standing of the bar or administration of justice, nor subversive of the public interest. Rule 218(c)(3)(i), Pa.R.D.E.

A reinstatement hearing is a searching inquiry into a lawyer's present professional and moral fitness to resume the practice of law. The object of concern is not solely the transgressions which gave rise to the lawyer's suspension, but rather the nature and extent of the rehabilitation efforts the lawyer has made since the time the sanction was imposed, and the degree of success achieved in the rehabilitative process. *Philadelphia Newspapers Inc. v. Disciplinary Board of the Supreme Court,* 468 Pa. 382, 363 A.2d 779 (1976).

Petitioner was convicted of harassment by communication, terroristic threats, summary harassment, indecent exposure, and disorderly conduct arising out of his conduct involving the harassment of a young adult woman and an orthodox priest, and his behavior at a Greek Orthodox monastery. Petitioner's criminal actions were substantially caused by substance abuse and bipolar disorder, which, at the time of the incidents, was undiagnosed. Petitioner was sentenced to one year of restrictive intermediate punishment and seven years of probation with numerous restrictive conditions. In 2000, petitioner's probation was terminated early by Judge Manning of the Allegheny County Court of Common Pleas. Petitioner fulfilled all terms and conditions of his sentence.

Petitioner's bipolar disorder, although presently in full remission, is incurable and is a lifelong disease. Petitioner offered credible evidence that he is aware of the impact and consequences of this disease on his life, and has taken every step possible to treat his disease. He began receiving treatment for bipolar disorder shortly after the criminal incidents in question. Dr. Marc Garfinkel has been in continuous charge of petitioner's psychiatric treatment and finds that petitioner has responded very favorably to his treatment plan of Depakote three times per day. Dr. Garfinkel keeps apprised of petitioner's progress through laboratory reports of the amount of medication in petitioner's blood serum and through in-person office visits every three to six months. Dr. Garfinkel finds petitioner to be stable and capable of handling the normal stresses involved with the practice of law.

Two witnesses testified on behalf of petitioner as to his positive commitment to recovery from substance abuse. One of these witnesses, Travis Klein, serves as petitioner's sponsor and is intimately aware of petitioner's efforts at maintaining sobriety. Mr. Klein is of the belief that petitioner is stable in his recovery and would be an asset to the legal community upon reinstatement.

A Greek Orthodox priest from petitioner's church in California testified as to petitioner's good character and his belief that he would not harm the public if reinstated. This priest was aware of the details of petitioner's conviction as it concerned the Greek Orthodox Church.

Petitioner demonstrated sincere remorse for his misconduct. He understands the harm and pain he inflicted

on his victims. He understands that his ability to avoid similar instances of harm to himself and others is within his control, that being able to continue his medication regimen, to abstain from drugs and alcohol, and to be aware of symptoms that might indicate a relapse.

During petitioner's suspension, he worked for a Pittsburgh lawyer and for a construction company. In 2001, he decided to pursue his interests in acting and screenwriting and moved to California. He has found work there in the theater and as an acting extra. He has also written a screenplay and is attempting to sell it. Petitioner plans to remain in California and, if reinstated, he hopes to sit for the California bar examination. Petitioner fulfilled all Continuing Legal Education requirements for reinstatement.

The board finds that petitioner has met with clear and convincing evidence his burden of proving that he is morally qualified, competent and learned in the law. Petitioner has successfully addressed the mental health and substance abuse issues which were the cause of his underlying misconduct. He has made a concerted effort to rehabilitate himself and start a new life. Furthermore, the board finds that petitioner's readmission will not be detrimental to the bar or the public. For these reasons, the board recommends that petitioner be reinstated to the practice of law.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that petitioner, Richard J. Walters, be reinstated to the practice of law.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement.

Board Members Pietragallo and Nordenberg did not participate in the September 27, 2004 adjudication.

## ORDER

And now, January 21, 2005, upon consideration of the report and recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania dated November 10, 2004, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.