In re Hykel

Disciplinary Board Docket no. 9 D.B. 2002.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

McLAUGHLIN, *Member,* July 8, 2005—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above captioned petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

Petitioner, John J. Hykel, filed a petition for reinstatement to the bar of the Supreme Court of Pennsylvania on May 30, 2003. Petitioner was suspended for two years retroactive to January 23, 2002, by order of the Supreme Court dated July 17, 2002. This was a reciprocal discipline based on petitioner's two-year suspension by the Immigration Court.

A reinstatement hearing was held on April 26 and April 28, 2004, before Hearing Committee 1.15 comprised of Chair Michael T. Scott, Esquire, and members Howard J. Kaufman, Esquire and Christopher R. Booth Jr., Esquire. Petitioner was represented by John Rogers Carroll, Esquire.

Following the submission of briefs by the parties, the Hearing Committee filed a report on January 18, 2005, and recommended that petitioner be reinstated to the practice of law.

Office of Disciplinary Counsel filed a brief on exceptions to the report on February 7, 2005. Respondent filed a brief opposing exceptions to the report on February 28, 2005.

This matter was adjudicated by the Disciplinary Board at the meeting of May 18, 2005.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner is John J. Hykel. He was born in 1949 and was admitted to practice law in Pennsylvania in 1976. His current home address is 111 Allgates Drive, Haverford PA 19041.

(2) Petitioner was suspended for two years retroactive to January 23, 2002, by order of the Supreme Court of Pennsylvania dated July 17, 2002.

(3) From May 1976 to May 1980, petitioner was employed by the Immigration and Naturalization Service (INS) in Philadelphia as a naturalization examiner.

(4) In May 1980, petitioner left the INS and opened a private law practice in Philadelphia. He specialized in immigration and naturalization cases and continued to do so for 20 years until his suspension by the Immigration Court. A consent order was entered by the immigration judge on February 7, 2002 suspending petitioner for two years, retroactive to March 8, 2001.

(5) In August 1997, an undercover FBI agent, accompanied by two cooperating government witnesses, met with petitioner in his Philadelphia law office to discuss obtaining work visas.

(6) One witness pretended to be the owner of a garment manufacturing company, who told petitioner that he was interested in securing work visas. Petitioner advised the witness that the men did not qualify for work visas and urged him to misrepresent their position in an application for labor certifications.

(7) On January 14, 1998, petitioner completed and delivered the false applications for labor certifications to the Alien Labor Certification Unit of the Pennsylvania Department of Labor and Industry. The certifications were then forwarded to the Department of Labor, an agency of the United States, for final review.

(8) In March 1998, petitioner was confronted by the FBI and admitted his criminal conduct. He cooperated with the government and entered into a cooperation agreement.

(9) On April 5, 2000, an Information was filed in the United States District Court for the Eastern District of Pennsylvania, charging petitioner with two counts of making false statements to an agency of the United States, in violation of 18 U.S.C. §1001, based on his attempt to obtain two immigrant work visas from the government by filing false applications for labor certifications.

(10) On May 25, 2000, petitioner pleaded guilty to both counts of the Information.

(11) On August 8, 2001, petitioner was sentenced to three years non-reporting probation, a $5,000 fine and a special assessment.

(12) Petitioner successfully completed his federal sentence on October 10, 2003, when his probation was terminated early.

(13) Petitioner suffers from an alcohol and cocaine dependency. He has been sober since 1993.

(14) Petitioner was diagnosed with bipolar disorder in June 1998. He takes the medication Neurontin and is under the care of Dr. Ronald Serota.

(15) According to Dr. Serota, who testified at the reinstatement hearing, petitioner's prognosis for recovery is very good based on his positive response to the medication, his consistency in taking it as prescribed, and his participation in psychotherapy.

(16) Petitioner understands that he must continue with his medication and therapy in order to ensure that his bipolar condition stays under control.

(17) In anticipation of being suspended from practice before the immigration courts and in Pennsylvania state court, petitioner contacted John Seehousen, a Philadelphia lawyer with 34 years of experience, to take over his practice while he was suspended.

(18) Mr. Seehousen agreed to form a partnership with petitioner and drafted a partnership agreement.

(19) As of March 8, 2001, the effective date of petitioner's suspension from the Immigration courts, Mr. Seehousen assumed responsibility as counsel for all immigration matters that previously had been handled by petitioner.

(20) As of March 8, 2001, petitioner stopped going to his office regularly and limited his activities to ministerial and paralegal services.

(21) He did not give advice to clients or practice law subsequent to March 8, 2001.

(22) Every existing client of petitioner's firm was advised by letter that petitioner had been suspended. These clients were asked to sign a contract acknowledging that Mr. Seehousen would be representing them.

(23) While new clients were not advised of petitioner's suspension, the letters of representation with new clients specified that Mr. Seehousen would handle the cases.

(24) As of February 22, 2002, the effective date of petitioner's suspension by the Supreme Court of Pennsylvania, petitioner ceased going to the office entirely and performed no paralegal work. Everything bearing petitioner's name was removed from the office, with the exception of a small plaque that said "John J. Hykel." This plaque was not visible to the public but remained on the door to petitioner's personal office.

(25) All legal fees that petitioner received from Mr. Seehousen in 2002, 2003, and 2004 were earned prior to the effective date of his state court suspension.

(26) During his suspension, petitioner volunteered to speak and lead Alcoholics Anonymous meetings at least twice per month in several county prisons in suburban Philadelphia.

(27) Petitioner volunteered more than 400 hours of service to AA at its Intergroup office in Philadelphia, answering telephone calls from people seeking help.

(28) Since May 2003, petitioner has been a volunteer with Compeer, a non-profit organization that matches volunteers with individuals who are having difficulties managing their mental illnesses. In this capacity, peti-

tioner spends at least one hour per week with an individual suffering from schizophrenia.

(29) William Wolf, Esquire, has been a member of the bar since 1959 and is a former chief of homicide and investigations with the Philadelphia District Attorney's office. He supports petitioner's reinstatement and believes petitioner has made amends for his behavior.

(30) Steven Barsamian has been an immigration lawyer since 1976. He believes that petitioner is very highly regarded in Philadelphia and would be an asset to the bar if readmitted.

(31) Scott Snyder has been petitioner's AA sponsor for approximately five years. Mr. Snyder believes that petitioner has shown remorse for his misconduct. He has no concerns about petitioner's ability to stay sober in the future.

(32) Petitioner fulfilled his required Continuing Legal Education credits for reinstatement.

(33) Petitioner read various periodicals during his suspension to keep apprised of the law in the immigration areas. These include Immigration Bulletins, Immigration Law and Procedure, Interpreter Releases, and Bender's Immigration and Nationality Act.

(34) If reinstated, petitioner plans to practice immigration law in Philadelphia.

(35) Petitioner has shown sincere remorse for his misconduct.

### III. CONCLUSIONS OF LAW

(1) Petitioner has the moral qualifications, competency and learning in the law required to practice law in Pennsylvania.

(2) Petitioner's resumption of the practice of law will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive of the public interest.

## IV. DISCUSSION

This matter is before the Disciplinary Board on a petition for reinstatement filed by John J. Hykel. By order of the Supreme Court of Pennsylvania dated July 17, 2002, petitioner was suspended from the practice of law for two years retroactive to January 23, 2002.

Pursuant to Rule 218(a), Pa.R.D.E., an attorney who is suspended for a period exceeding one year may not resume the practice of law until reinstated by the Supreme Court of Pennsylvania. In order for petitioner to gain reinstatement, he has the burden of proving by clear and convincing evidence that he possesses the moral qualifications, competency and learning in the law required for admission to practice law in this Commonwealth. In addition, petitioner has the burden of demonstrating that his resumption of the practice of law will not be detrimental to the integrity and standing of the bar or administration of justice, nor subversive of the public interest. Rule 218(c)(3)(i), Pa.R.D.E.

A reinstatement proceeding is a searching inquiry into a lawyer's present professional and moral fitness to resume the practice of law. The object of concern is not solely the transgressions which gave rise to the lawyer's suspension, but rather the nature and extent of the rehabilitation efforts the lawyer has made since the time that sanction was imposed, and the degree of success achieved in the rehabilitative process. *Philadelphia Newspapers*

*Inc. v. Disciplinary Board of the Supreme Court,* 468 Pa. 382, 363 A.2d 779 (1976).

Petitioner pleaded guilty to two counts of making false statements to a federal agency after he completed and delivered two false applications for labor certifications to the Alien Labor Certification Unit of the Pennsylvania Department of Labor and Industry, which were subsequently forwarded to the Department of Labor. Petitioner was sentenced to three years non-reporting probation. Petitioner's conviction resulted in his suspension before the Immigration courts as well as the Supreme Court of Pennsylvania.

Petitioner has provided clear and convincing evidence that he is fit and qualified to practice law in Pennsylvania. Petitioner fulfilled the requirements of his criminal sentence. He has involved himself with volunteer work for Alcoholics Anonymous and Compeer, an organization matching volunteers with mentally ill people requiring assistance. Petitioner's involvement with AA is based on his history of alcohol and cocaine addictions and subsequent recovery. Petitioner has been sober since 1993 and has maintained his sobriety since that time period.

Petitioner was diagnosed with bipolar disorder in 1998. He takes the medication Nuerontin under the care of his physician, Dr. Ronald Serota. This medication has successfully controlled the symptoms of the bipolar disorder. Petitioner plans to continue taking this medication and undergoing psychotherapy with Dr. Serota. Dr. Serota opined that petitioner's prognosis is very good and he is fit to practice law.

Several character witnesses testified on behalf of petitioner. William Wolf and Steven Barsamian are respected attorneys in Philadelphia and both offered opinions that petitioner's readmission to the bar would be an asset, not a detriment. Scott Snyder is petitioner's AA sponsor and offered his credible opinion that petitioner is a fit and stable person.

Petitioner took steps to remove himself from the practice of law following his suspension. Shortly before the suspension, and in anticipation thereof, petitioner formed a partnership with Attorney John Seehousen, who agreed to take over petitioner's practice during the suspension. While Office of Disciplinary Counsel raised concerns about this activity, the board finds nothing improper occurred. Petitioner ceased practicing law and did not perform any paralegal work for Mr. Seehousen. Any fees received by petitioner from Mr. Seehousen in 2002, 2003 and 2004 were earned prior to the effective date of his suspension by the Supreme Court, thus these payments were permitted and in compliance with the Rules of Professional Conduct. All existing clients were notified of petitioner's suspension. While new clients were not notified, the letters of representation for new clients stated that Mr. Seehousen would be handling the legal matter. Petitioner removed all indicia of his licensure, but for a small plaque on the door of his personal office, which was not visible to clients.

Petitioner fulfilled his Continuing Legal Education credits, and kept apprised of the status of the law in the immigration area by reading legal periodicals and journals. Petitioner expressed credible remorse and acknowledged how painful this episode in his life has been. He

takes full responsibility for his criminal conduct. Petitioner is now in control of his life and ready to resume practice.

Petitioner has met with clear and convincing evidence his burden of proving that he is morally qualified, competent and learned in the law. Furthermore, the board finds that petitioner's readmission will not be detrimental to the bar or the public. For these reasons the board recommends that petitioner be reinstated to the practice of law.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that petitioner, John J. Hykel, be reinstated to the practice of law.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement.

Board Members Raspanti and Nordenberg did not participate in the May 18, 2005 adjudication.

## ORDER

And now, September 26, 2005, upon consideration of the report and recommendations of the Disciplinary Board dated July 8, 2005, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.