**In re Jacobs**

Disciplinary Board Docket nos. 68 D.B. 2002 and 88 D.B. 2003.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

NEWMAN, *Member,* December 21, 2006—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above captioned petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

By order of the Supreme Court of Pennsylvania dated June 26, 2003, Robert C. Jacobs was suspended from the practice of law for 41 months retroactive to June 13, 2002. Mr. Jacobs filed a petition for reinstatement from suspension on December 28, 2005. Office of Disciplinary Counsel filed a response to petition on April 3, 2006, stating its intent not to oppose the reinstatement.

A reinstatement hearing was held on May 2, 2006, before a District I Hearing Committee comprised of Chair Steven M. Steingard, Esquire, and Members A. Harold Datz, Esquire, and W. Matthew Reber, Esquire. Petitioner was represented by John Rogers Carroll, Esquire.

The hearing committee filed a report on August 17, 2006, and recommended that the petition for reinstatement be granted.

This matter was adjudicated by the Disciplinary Board at the meeting on November 15, 2006.

## II. FINDINGS OF FACT

The Board makes the following findings of fact:

(1) Petitioner is Robert C. Jacobs. He was born in 1951 and was admitted to the practice of law in Pennsylvania in 1976. His current business address is 1700 Walnut Street, Suite 200, Philadelphia, PA 19103.

(2) In 1998 petitioner was a tax attorney for J.G. Wentworth S.S.C., a limited partnership formed to purchase structured settlements, and for its three partners, including James Delaney.

(3) In the spring of 1998, petitioner, while representing J.G. Wentworth and its partners, fraudulently created and backdated documents on behalf of the partners which falsely supported tax deductions to which they were not entitled in the years claimed.

(4) Petitioner also impeded the administration of internal revenue laws by causing IRS auditors examining Delaney's individual income tax returns to rely on false information concerning the validity of claimed deductions for partnership losses.

(5) Although petitioner had no direct personal benefit at stake in creating the false documentation, he was concerned that his law firm might lose a significant client if he did not accommodate their request. He also stood to benefit indirectly by keeping J.G. Wentworth as a client of the firm.

(6) On March 5, 2002, petitioner was charged with one count of conspiracy to defraud the IRS in violation of 18 U.S.C. §371 and one count of attempting to interfere with the administration of IRS laws in violation of 26 U.S.C. §7212. (*United States v. Robert Jacobs,* criminal no. 02-134-02, United States District Court, Eastern District of Pennsylvania).

(7) On May 6, 2002, petitioner pleaded guilty to both counts of the indictment.

(8) On August 19, 2002, petitioner was sentenced by the Honorable Berle M. Schiller, U.S. District Judge, to six-months imprisonment in a community corrections center, followed by three years supervised release. He was fined $100,000 and ordered to pay a $200 special assessment.

(9) As a condition of his supervised release, petitioner served five months in home detention after his community corrections release. He was also required to complete 250 hours of community service while on supervised release.

(10) Petitioner successfully completed his sentence, spending six months in the federal community corrections center at Broad and Spring Garden Streets in Philadelphia and five months in home detention, completing his community service obligation and timely paying his fine and assessment.

(11) On April 25, 2005, petitioner's application for early termination of supervised release was granted by Judge Schiller effective immediately.

(12) On June 13, 2002, the Supreme Court of Pennsylvania granted a joint petition to temporarily suspend petitioner as a result of his guilty plea.

(13) On September 20, 2002, petitioner was notified by the U.S. Department of Housing and Urban Development of his proposed debarment from participation in government programs as a result of his criminal conviction.

(14) On October 24, 2002, petitioner made an offer of consent to suspension from practice before the Department of Treasury, Internal Revenue Service, for 41 months beginning October 21, 2002, and ending on April 20, 2006.

(15) On October 30, 2002, the IRS accepted the offer and petitioner was suspended for 41 months.

(16) On December 10, 2002, the U.S. Department of Housing and Urban Development and petitioner entered into a settlement agreement whereby petitioner was debarred from government procurement and non-procurement programs for 18 months retroactive to May 8, 2002.

(17) By order of March 27, 2003, the Supreme Court of Pennsylvania issued a rule to show cause on petitioner to show why reciprocal discipline should not be imposed pursuant to Rule 216, Pa.R.D.E.

(18) On June 26, 2003, the Supreme Court of Pennsylvania suspended petitioner from the practice of law in Pennsylvania for a period of 41 months, retroactive to June 13, 2002, the date of temporary suspension.

(19) After entering his guilty plea in May 2002, petitioner resigned his partnership with Wolf Block.

(20) In compliance with the Rules of Disciplinary Enforcement and Disciplinary Board Rules, petitioner sent notice of his suspension to all of his existing clients.

(21) On July 19, 2002, petitioner filed the statement of compliance required by the rules, stating that he had notified all existing clients of his suspension and had fully complied with the court's temporary suspension order and the applicable provisions of the rules.

(22) Petitioner has not practiced law or held himself out as an attorney during the time frame of his suspension.

(23) Working as a financial consultant in real estate transactions since his suspension, petitioner limited his work to only the financial aspects and in every instance informed the clients and their attorneys that he was not a practicing lawyer, and he did not participate in the legal work on the transactions.

(24) Petitioner failed to cancel his listings as an attorney in the 2003-2004 super pages and the current internet yellow pages.

(25) Petitioner failed to correct his accountant's reference to his occupation as an attorney in the copies of his 2002-2004 tax returns.

(26) These failures were inadvertent and minor technical violations of Rule 217, Pa.R.D.E.

(27) As part of his rehabilitation over the past four years, petitioner has been an active volunteer. He has devoted substantial time to two charities in particular: Federation Housing and Trinity Episcopal Church soup kitchen.

(28) Federation Housing is a nonprofit organization established by the Jewish Federation of Greater Philadelphia to develop and manage subsidized housing for low or modest income elderly persons. Petitioner was a

board member of Federation Housing for at least 15 years.

(29) When petitioner entered his guilty plea in May 2002, he resigned his position on the board of Federation Housing.

(30) Petitioner stayed with Federation Housing as an unpaid consultant and over the past four years has assisted in the refinancing of several properties and provided financial advice to the current board members when requested.

(31) Petitioner described his underlying misconduct as a disgrace. He acknowledged that he embarrassed his family, friends and law partners.

(32) Petitioner described his misconduct as an act of stupidity and plainly wrong. He explained that he will be more careful and responsible in his dealings in the future.

(33) Richard Canel, Esquire, is a lawyer who worked closely with petitioner for four years at Wolf Block. He believes that petitioner has learned from his mistake and was very pained by it.

(34) Mr. Canel believes petitioner is a better person and a more careful person and is qualified to return to the practice of law.

(35) Mr. Canel described petitioner as extraordinarily bright and talented. As an indication of the high esteem he feels for petitioner, Mr. Canel testified that if petitioner is reinstated, his firm would be honored to have him join them as a partner.

(36) Barry Ludwig is a long-time board member and president of Federation Housing and has known peti-

tioner for 15 years. He described petitioner as forthright, exceptionally knowledgeable and very helpful to his organization.

(37) Jerold Novick, Esquire, is a real estate practitioner with Klehr Harrison and a former partner of petitioner at Wolf Block. He opined that petitioner has the highest integrity.

(38) Asked about the issue of petitioner's remorse and any changes he has noticed, Mr. Novick testified: "I know that he regrets everything that happened and wouldn't repeat the mistake again."

(39) Mr. Novick does not believe that the reputation of the bar would suffer if petitioner were reinstated.

(40) Petitioner has taken more than 38 credit hours and has satisfied the requirements for continuing legal education to be reinstated.

(41) During his suspension, petitioner remained current in real estate tax law by purchasing and reading the 2004 and 2005 IRS Code Amendments and Regulations related to his areas of practice and taking several tax-related CLE courses.

## III. CONCLUSIONS OF LAW

(1) Petitioner has the moral qualifications, competency and learning in the law required to practice law in Pennsylvania.

(2) Petitioner's resumption of the practice of law will be neither detrimental to the integrity and standing of the bar and administration of justice nor subversive of the public interest.

## IV. DISCUSSION

Petitioner has filed a petition to resume practicing law in Pennsylvania following his 41 month suspension for conviction of the crimes of conspiracy to defraud the IRS and attempting to interfere with the administration of IRS laws.

Pursuant to Rule 218(a), Pa.R.D.E., an attorney who is suspended for a period exceeding one year may not resume the practice of law until reinstated by the Supreme Court of Pennsylvania. In order for petitioner to gain reinstatement, he has the burden of proving by clear and convincing evidence that he possesses the moral qualifications, competency and learning in the law required for admission to practice law in this Commonwealth. In addition, petitioner bears the burden of demonstrating that his resumption of the practice of law will not be detrimental to the integrity and standing of the bar or administration of justice nor subversive of the public interest. Rule 218(c)(3)(i), Pa.R.D.E.

A reinstatement proceeding is a searching inquiry into a lawyer's present professional and moral fitness to resume the practice of law. The object of concern is not solely the transgressions which gave rise to the lawyer's suspension, but rather the nature and extent of the rehabilitation efforts the lawyer has made since the time that sanction was imposed, and the degree of success achieved in the rehabilitative process. *Philadelphia Newspapers Inc. v. Disciplinary Board of the Supreme Court,* 468 Pa. 382, 363 A.2d 779 (1976).

There is clear evidence in the record that petitioner has been rehabilitated through recognition of his wrongdoing, successfully serving his criminal sentence, changing his attitude and volunteering his time and talents.

Petitioner has undergone nearly four years of rehabilitation, which efforts have been favorably observed by petitioner's testifying witnesses.

Shortly after his indictment, petitioner acknowledged that he had committed a crime, that he had done something wrong when he created backdated documents for clients and provided false information to IRS auditors during their investigation of his client. Petitioner entered a guilty plea and served his sentence without incident, spending six months in a federal community corrections center and five months in home detention. He completed 250 hours of community service.

Petitioner characterized his criminal conduct as "an act of gross stupidity." He did not attempt to justify his actions to the hearing committee. Instead he testified that his actions were plainly and obviously wrong. Petitioner expressed sincere remorse. He is keenly aware of the magnitude of his misconduct and the embarrassment he caused to his family, friends and law partners. Petitioner does believe that he is not the same person that engaged in criminal conduct and he does believe that he has learned from his experience.

Further evidence of petitioner's rehabilitation is found in his volunteer work during his suspension. He worked as an unpaid consultant to Federation Housing, a nonprofit organization, and he volunteered at a soup kitchen.

Apart from his volunteer work, petitioner worked as a financial consultant in real estate transactions, using his business expertise to assist developers and investors. Petitioner did not practice law while engaged in these endeavors and made certain that all parties were aware of his inability to practice law.

Office of Disciplinary Counsel does not oppose petitioner's reinstatement; however, it did raise an issue that petitioner may have held himself out as an attorney during his suspension. Petitioner failed to remove his professional listing from all telephone and internet directories and failed to correct his accountant's error in listing his occupation as that of an attorney in his tax returns. While it appears that petitioner was remiss in failing to attend to these items, the board does not find that petitioner was interested in practicing law and intentionally sought clientele from telephone or internet notices. Likewise, the mistake on the tax returns was not intended to deceive the IRS. Petitioner's mistakes were minor technical errors in the overall context of the case and do not serve as an impediment to reinstatement.

Petitioner satisfied his burden of proving he is competent and learned in the law. He fulfilled his continuing legal education credits and remained current in the law. Petitioner's colleagues described him as extraordinarily bright and talented and hold him in high esteem. Richard Canel continued to refer clients to petitioner's financial consulting business after the suspension, as he considered petitioner "the best guy in town."

Petitioner is fit to resume the practice of law. He does not pose a threat to the public, the courts or the legal profession. His colleagues who testified support his reinstatement and believe that he has learned from his mistakes and will be a more careful practitioner, as well as an asset to the community.

Petitioner proved by clear and convincing evidence that he is fit to return to the practice of law. For the rea-

sons stated above, the board recommends that the petition for reinstatement be granted.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that petitioner, Robert C. Jacobs, be reinstated to the practice of law.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement.

Board Member Jefferies did not participate in the adjudication.

## ORDER

And now, March 13, 2007, upon consideration of the report and recommendations of the Disciplinary Board dated December 21, 2006, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.